**In re MARTHA WASHINGTON HOSPITAL, Debtor.**

**HEALTHFIRST, Appellant,**

v.

**MARTHA WASHINGTON HOSPITAL, Appellee.**

**No. 90 B 17087.**
**Appeal No. 92 C 5317.**

United States District Court,
N.D. Illinois, E.D.

Aug. 3, 1993.

Leslie Wulfsohn Loftus, Chicago, IL, for appellant.

Robert Anthony Carrane, Robert Anthony Carrane and Assoc., Robert D. Nachman, John Peter Rompon, Schwartz, Cooper, Kolb & Chtd., Chicago, IL, for appellee.

Robert D. Nachman, Schwartz, Cooper, Kolb & Chtd., Chicago, IL, for debtor.

## MEMORANDUM OPINION AND ORDER

LINDBERG, District Judge.

On March 21, 1989, appellant Healthfirst treated Miguel Rodriguez ("Rodriguez") as an emergency patient. On April 14, 1989, Rodriguez was admitted to debtor-appellee Martha Washington Hospital ("Martha Washington") where he subsequently died. The administrator of Rodriguez's estate subsequently filed a medical malpractice action against Healthfirst on March 22, 1991. Healthfirst sought to assert a contribution claim against Martha Washington but the hospital had filed a Chapter 11 bankruptcy petition on or about September 18, 1990 and an automatic stay was issued prohibiting the assertion of any subsequent claims.

Because the bar date for filing claims had expired before the malpractice action was filed, the bankruptcy court granted Healthfirst's proof of claim alleging that if it was found liable for malpractice in the state court action, Martha Washington would be liable to Healthfirst for contribution pursuant to the Illinois Joint Tortfeasor Contribution act, 740 ILCS 100/0.01 et seq. Healthfirst then moved to lift the automatic stay so it could file its third party action against Martha Washington.

Martha Washington objected to Healthfirst's contribution claim on the basis that it was contingent and unliquidated. The bankruptcy court determined Healthfirst's claim to be contingent and disallowed it pursuant to 11 USC § 502(e)(1)(B). Martha Washington also objected to Healthfirst's motion to lift the stay claiming that defending the third party action would exhaust the assets of the bankruptcy estate. The bankruptcy court denied the motion to lift the automatic stay but conditioned its ruling on Martha Washington's stipulation to not raise Healthfirst's failure to join the hospital in the malpractice action as a defense to any subsequent contribution claim by Healthfirst.

Healthfirst appeals both orders of the bankruptcy court. Healthfirst contends that it is unconstitutional for the bankruptcy court to bar Healthfirst's claim on the ground that it is contingent and, at the same time, deny its motion to lift the stay. According to Healthfirst, these orders prevent Healthfirst from converting its claim against Martha Washington to a non-contingent, liquidated claim. Because it is likely the bankruptcy will be resolved by the time the malpractice claim is litigated, Healthfirst contends the bankruptcy court's ruling leaves it with no remedy.

When hearing an appeal from a bankruptcy court, the district court sits as an appellate court. *In re Neis,* 723 F.2d 584, 588 (7th Cir.1983). The district court reviews a bankruptcy court's legal determinations de novo and its findings of fact under a clearly erroneous standard. *Matter of Bonnett,* 895 F.2d 1155 (7th Cir. 1989). "De novo" review requires the district court to make an independent determination of the issues and not give any weight to the prior determination by the bankruptcy court. *United States v. First City National Bank,* 386 U.S. 361, 368, 87 S.Ct. 1088, 1093, 18 L.Ed.2d 151 (1967). Because the bankruptcy court's order disal-

lowing Healthfirst's contribution claim involves a question of law, the court will review this ruling de novo.

■ Section 502(e)(1)(B) of the United States Bankruptcy Code provides that claims for contribution are contingent in nature and must be disallowed by the bankruptcy court:

> [T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured, the claim of a creditor, to the extent that—
>
> .　　.　　.　　.　　.
>
> (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution;

11 U.S.C. § 502(e)(1)(B). Section 502(e)(1)(B) epitomizes the Congressional policy that underlies the Bankruptcy Code and Chapter 11 in particular—that "the bankrupt's estate should not be burdened by estimated claims contingent in nature. Rather, the debtor should be expeditiously rehabilitated and reorganized, thereby providing the bankrupt a fresh start, while simultaneously according fair treatment to creditors by paying ascertainable claims as quickly as possible." *In re Charter Company*, 862 F.2d 1500, 1502 (11th Cir.1989).

Healthfirst does not dispute that its contribution claim is contingent nor does it contend that application of Section 502(e)(1)(B) alone deprives it of a remedy. Appellant recognizes that if a contribution claim is subsequently rendered non-contingent, Section 502(e)(2) requires the bankruptcy court to allow the claim as if it were fixed prior to the commencement of the petition. 11 U.S.C. § 502(e)(2). Instead, Healthfirst contends that the application of Section 502(e)(1)(B) which bars contingent claims, coupled with the bankruptcy court's refusal to lift the automatic stay, denies it

a remedy by preventing it from converting its contribution claim to a non-contingent, liquidated claim.

In response, Martha Washington asserts that it is unreasonable to lift the stay and require the bankruptcy estate to expend money defending a disallowed claim. The contribution claim cannot be rendered non-contingent and allowable until a judgment finding Healthfirst liable for malpractice is entered in state court or Healthfirst enters into a settlement agreement with the decedent's estate whereby the decedent's estate specifically extinguishes any liability on the part of both Healthfirst and Martha Washington.[1] See *In re Baldwin–United Corp.*, 55 B.R. 885 (Bankr.S.D.Ohio 1985) ("The codebtor [Healthfirst] asserting a claim for contribution has no right to any distribution from the debtor's estate [Martha Washington] until the creditor's claim [estate of decedent] has been paid in full"). According to Martha Washington, the bankruptcy estate will take no more than two years to be resolved while the state malpractice action will take at least four or five years to litigate. Because the contribution claim most likely cannot be rendered non-contingent and allowable before the bankruptcy estate is closed, Martha Washington contends that any fees and costs expended in defending the claim would be a waste of the bankruptcy estate's assets.

■ Section 362(d) of the Bankruptcy Code gives the bankruptcy court discretion to order relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. 362(d). See *In re Pettibone*, 110 B.R. 848, 855 (Bankr. N.D.Ill.1990). Because the Bankruptcy Code commits this decision to the discretion of the bankruptcy court, the ruling can be overturned only upon a showing of abuse of discretion. See *Matter of Holtkamp*, 669 F.2d 505, 509 (7th Cir.1982).

---

**1.** If Healthfirst were to settle with the decedent's estate instead of litigating the malpractice action in state court, Healthfirst would have no contribution claim to assert against Martha Washington in bankruptcy unless the decedent's estate also released Martha Washington from any liability. The Illinois Contribution Act provides that a "tortfeasor who settles with a claimant pursuant to paragraph (c) is not entitled to recover contribution from another tortfeasor whose liability is not extinguished by the settlement." 740 ILCS 100/2(e).

■ Bankruptcy courts have devised a three prong test to determine whether an automatic stay should be lifted to allow continuation of a pending lawsuit. See *In re Bock Laundry Machine Co.*, 37 B.R. 564, 566 (Bankr.N.D.Ohio 1984). The first prong assesses whether any "great prejudice to either the bankrupt estate or the debtor will result from the continuation of a civil suit." *Id.* The second prong is to determine whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor. The third prong requires the court to examine whether the creditor has a probability of success on the merits of his case. *Id.*

■ Often lifting or not lifting the stay will impose hardship on all parties to the suit. Determining whether or not the stay should be lifted should be based on the degree of hardship and the overall goals of the Bankruptcy Code. It is not enough for the creditor to merely show that it will be hurt by the continuation of the stay, rather the creditor must show that neither the debtor nor the other creditors will be injured if the stay is lifted. See Ginsberg, *Bankruptcy*, at 3306 (1985).

In support of its abuse of discretion argument, Healthfirst contends that the automatic stay should be lifted when the state court claim to be litigated does not interfere with the bankruptcy proceeding or prejudice the bankruptcy estate. *Holtkamp*, 669 F.2d at 508. In *Holtkamp*, defendants-appellants filed a Chapter 11 petition five days before they were to defend against a personal injury suit brought by plaintiff-appellee. *Id.* at 507. The personal injury suit was stayed automatically pursuant to 22 USC § 362(a). The bankruptcy court granted plaintiff-appellee's request to lift the stay and permit the personal injury suit to proceed to judgment. However, the bankruptcy court prohibited plaintiff-appellee from attempting to collect any judgment he might receive. *Id.* at 507. The Seventh Circuit cited the legislative history of Section 362(a) in determining that the bankruptcy court had not abused its discretion in lifting the automatic stay:

[I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.

*Id.* at 508, citing S.Rep.No. 989, 95th Cong., 2d Sess. 50, reprinted in U.S.Code Cong. & Ad.News 5836. The Court determined that the order lifting the stay did not jeopardize the bankruptcy estate because defendant-appellant's insurance company assumed full financial responsibility for defending the suit. *Id.* at 508–509. The Seventh Circuit further explained that the interests of judicial economy militated in favor of permitting the state court action to go forward as the personal injury action did not require the expertise of the bankruptcy court, the trial was set to commence in a few days and out-of-state witnesses had already been subpoenaed. *Id.*

■ Here, Martha Washington is self-insured and its excess insurer has refused to defend Martha Washington in the state malpractice action. If the stay were lifted, the assets of the bankruptcy estate would be used to litigate Healthfirst's contribution claim—a claim disallowed by the bankruptcy court pursuant to Section 502(e)(1)(B). Martha Washington would then be depleting the estate of assets which would otherwise be distributed to creditors with ascertainable, non-contingent claims. Such expenditures would conflict with the underlying purpose of the bankruptcy stay "to preserve what remains of the debtor's insolvent estate and to provide a systematic equitable liquidation procedure for all creditors." *Id.* at 508.

In addition, the judicial economy concerns articulated in *Holtkamp* are not present. Trial is not imminent. The parties have not even informed the court whether a trial date has been set. While Healthfirst argues that it is in the interest of judicial economy to lift the stay so liability issues are not relitigated in bankruptcy court or inconsistent liability determina-

tions made in the state and bankruptcy courts (See *In re Davis,* 91 B.R. 470, 471 (Bankr.N.D.Ill.1988), Healthfirst ignores the very real probability that the bankruptcy estate will be closed years before the state action is resolved. The assets of the bankruptcy estate will have been expended needlessly in defending against what is essentially a non-claim.

Healthfirst further argues that it is unjust to allow Martha Washington to escape tort liability through bankruptcy. See *In re Bock Laundry Machine Co.,* 37 B.R. 564 (Bankr.N.D.Ohio 1984). In *Bock Laundry,* the debtor manufactured centrifugal extractors, a device used in a variety of laundry and cleaning processes. After the extractors malfunctioned and injured several individuals, forty-three personal injury lawsuits were commenced against the manufacturer. Shortly thereafter, the manufacturer filed Chapter 11. *Id.* at 565. Three creditor-plaintiffs moved for relief from the automatic stay, which was granted. The bankruptcy court balanced the hardships and determined that the creditor-plaintiffs would be unduly burdened by being unable to litigate their state court claims and that any hardship to the debtor-defendant was alleviated by its insurer's obligation to defend the claims.

In this case, Martha Washington brought its Chapter 11 petition six months before the malpractice action was filed. Under these circumstances, the court cannot reasonably infer that Martha Washington filed bankruptcy to escape the malpractice action, much less Healthfirst's contribution claim. Unlike *Bock Laundry* where the stay prevented the creditor-plaintiffs from litigating their personal injury actions, the bankruptcy stay in this case does not affect either the decedent's ability to prosecute the malpractice action or Healthfirst's ability to prove its conduct met the standard of care.

Although the bankruptcy court did not expressly apply the elements of the three part test, the bankruptcy court recognized that both parties would suffer some hardship by an unfavorable ruling on the motion to lift the stay. In denying the mo-

tion, the bankruptcy court determined that the greater hardship would be to require Martha Washington to incur attorneys fees and costs in defending against a disallowed, contingent claim. The bankruptcy court implicitly reasoned that Martha Washington should not have to deplete the estate of funds which would otherwise be distributed to creditors with non-contingent, ascertainable claims when there was little chance that the contribution claim could be rendered non-contingent and allowable before the bankruptcy estate was closed. In attempting to balance the hardships to both parties, the bankruptcy court conditioned its ruling on Martha Washington's stipulation to not raise Healthfirst's failure to join the hospital in the malpractice action as a defense to any subsequent contribution claim by Healthfirst.

Healthfirst contends that Martha Washington cannot legally waive this defense because the Illinois Joint Tortfeasor Contribution Act requires a contribution claim to be brought in the original action. 740 ILCS 100/5; See *Laue v. Leifheit,* 105 Ill.2d 191, 85 Ill.Dec. 340, 473 N.E.2d 939 (1984); *Henry v. St. John's Hospital,* 138 Ill.2d 533, 150 Ill.Dec. 523, 563 N.E.2d 410 (1990) (where there is a pending action, the contribution action must be asserted in that action).

This court has found no Illinois case law which discusses whether the parties can agree to waive this section of the Contribution Act. Somewhat analogous to a statute of limitations, Section 5 limits the time frame for filing contribution actions by requiring that such actions be brought in the original action. Because the Illinois courts have held that the statute of limitations is a procedural bar which can be waived by the parties (See *Bailey v. Petroff,* 170 Ill. App.3d 791, 121 Ill.Dec. 472, 525 N.E.2d 278 (5th Dist.1988)), it can be argued that Section 5 is similarly waivable. Given the reasoned argument which can be made concerning the parties' ability to waive Section 5 of the Contribution Act, the bankruptcy court did not abuse its discretion in conditioning its decision to not lift the stay on the hospital's stipulation to not raise Sec-

tion 5 as a defense to any subsequent contribution claim.

However, because the Illinois courts may determine that joint tortfeasors cannot stipulate to a waiver of Section 5, the bankruptcy court may wish to modify its order and lift the automatic stay for the limited purpose of allowing Healthfirst to file, but not prosecute, its contribution claim against Martha Washington in the pending state court action. This would effectuate the bankruptcy court's compromise but alleviate Healthfirst's concerns about Section 5. For example, if Healthfirst were to subsequently settle the malpractice action with the appropriate releases by the decedent's estate, Healthfirst could bring a noncontingent, allowable contribution claim in the Martha Washington bankruptcy proceeding without being concerned that Section 5 (the failure to file the contribution claim in the original proceeding) might bar recovery.

ORDERED: The orders of the bankruptcy court are affirmed. Healthfirst may wish to file a motion requesting the bankruptcy court to modify its order concerning the automatic stay pursuant to the reasons articulated herein.