PETTIBONE CORPORATION, a/k/a Beardsley & Piper, Johnston & Jennings, Ocecco, Pettibone Alabama, Pettibone Mercury, Barko Alabama, Barko Greenville, and f/k/a Magnum Industries, Pettibone Mulliken, Pettibone Georgia, Mercury Manufacturing, Pettibone Minnesota, Pettibone New York, Pettibone Wisconsin, Pettibone Westrac, National Iron Co., Pettibone Compaction, Sure Seal Division, Barko Hydraulics, Inc.; Pettibone Michigan Corporation; Pettibone International Sales Corporation; Pettibone Tiffin Corporation, a/k/a and f/k/a Hanson Machinery Com-

pany; Pettibone Ohio Corporation, a/k/a and f/k/a Cleveland Frog & Crossing Company; Pettibone Credit Corporation; The Universal Engineering Corporation; Pettibone Texas Corporation; and Hammermills, Inc., Appellants,

v.

Robert HAWXHURST, Appellee.

No. 93 C 5130.

United States District Court, N.D. Illinois, E.D.

Jan. 28, 1994.

991

Robert D. Kolar, Thomas Michael Sheehan, Robert D. Kolar & Associates, Chicago, IL, for appellants.

Richard L. Hirsh, Richard L. Hirsh & Associates, Oak Brook, IL, for appellee.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is an appeal from the United States Bankruptcy Court for the Northern District of Illinois. The court affirms the bankruptcy court for reasons that follow.

*FACTS*

Pettibone Corporation and its related entities ("Pettibone") appeal the bankruptcy court's July 2, 1993 modification of the statutory injunction of discharge entered pursuant to 11 U.S.C. §§ 524 and 1141. 156 B.R. 220. Although Pettibone's Chapter 11 Plan of Reorganization ("Plan") was confirmed on December 9, 1988, the bankruptcy court's July 2nd order allowed appellee Robert Hawxhurst ("Hawxhurst") to continue prosecuting a personal injury claim against Pettibone that was pending prior to the initiation of bankruptcy proceedings, ostensibly in order to allow Hawxhurst to recover solely from Pettibone's insurer. Pettibone claims the bankruptcy court's order modifying the injunction of discharge and lifting the bar against Hawxhurst's personal injury claim should be reversed.

Hawxhurst, a former employee of TWA Airlines, filed a product liability suit against Pettibone on October 28, 1983 in New York state court alleging that he suffered serious personal injuries when a baggage tractor that Pettibone had manufactured overturned upon him. This action proceeded actively for nearly two years with the development of discovery and investigation into the alleged defective tractor. Pettibone, however, no longer manufactures the tractor.

Pettibone carried insurance to insure itself from products liability claims. Northumberland General Insurance Company ("Northumberland") provided a layer of coverage above Pettibone's "self-insured retention," or deductible, for the 1981–82 policy year relevant to Hawxhurst's action. Northumberland assumed the obligation of defending against Hawxhurst's action pursuant to the terms of its insurance policy. The next $5 million in coverage was provided by American Centennial Insurance Company ("American"). A third layer of coverage was also obtained from another company.

Northumberland, however, became insolvent in July of 1985 and consequently became unable to satisfy its obligations under its policy with Pettibone, including its obli-

gation to defend Pettibone in personal injury suits. The excess insurers, arguing that they had no duty to defend, also refused to defend Pettibone in any of its personal injury cases throughout the country.

Six months after Northumberland's insolvency, in January 1986, Pettibone sought protection under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.,* in the Northern District of Illinois. Pettibone's Chapter 11 petition automatically stayed Hawxhurst's product liability action pursuant to 11 U.S.C. § 362. According to the findings of the bankruptcy court below, Hawxhurst's attorney, and thus Hawxhurst, received actual notice of Pettibone's bankruptcy.

During Pettibone's reorganization, Pettibone was able to negotiate a series of agreements with its excess insurers whereby the excess insurers agreed to defend Pettibone in the personal injury cases and to pay the claims up to their policy limits. Such an agreement was entered into in May 1987 with American (the "Step–Up Agreement").[1] Pettibone's Plan, later confirmed, incorporated these agreements. Under the Plan, personal injury claimants, who are divided into groups by policy year, share *pro rata* in each group the burden of Pettibone's deductible for their policy year and hold unsecured claims against the estate for their shares. If the aggregate of the claims exceeds the deductible for the relevant policy year, then the claimants may recover the excess *pro rata* from the proceeds of available excess insurance coverage, up to the limit of such insurance for that year. American's policy of insurance was for $5 million ultimate net loss, meaning the policy would cover the indemnity amounts, after deducting defense expenses, up to a total of $5 million.

Hawxhurst, however, did not participate in Pettibone's reorganization. Although Hawxhurst was notified of the bankruptcy proceedings and the October 31, 1986 deadline for filing claims, he failed to file a proof of claim in the bankruptcy court to preserve his

---

**1.** Under the terms of the agreements, Pettibone is obliged to do its part and meet its deductible before the excess insurers would kick out any money. Defense costs, furthermore, would be credited against the policy coverage.

personal injury claim against Pettibone. Pettibone's Committee of Official Unsecured Creditors subsequently filed a motion to disallow all personal injury claims for which no proof of claim was filed. Notice of that motion was sent to all affected parties. On March 11, 1988, the bankruptcy court entered an order specifically disallowing Hawxhurst's claim, along with various other personal injury claims, because the claims were not timely filed. Pettibone's Plan was confirmed on December 9, 1988.

Four years after confirmation of Pettibone's Plan, Hawxhurst filed a motion in the bankruptcy court seeking various forms of relief. Pursuant to Fed.R.Civ.P. 60(b), Hawxhurst sought relief from the bankruptcy court's March 11th order disallowing his claim. Hawxhurst further sought leave to file a late proof of claim and sought to modify the post-confirmation injunction imposed by 11 U.S.C. §§ 524 and 1141 and the order confirming the Plan. By these motions Hawxhurst attempted to participate in the distribution of Pettibone's assets as a class four creditor.

In a thoughtful and extensive opinion after a hearing on the motion, Bankruptcy Judge Jack B. Schmetterer denied Hawxhurst's request for leave to file a late proof of claim and his motion for Rule 60(b) relief, thus preventing him from participating as a class four creditor. Nonetheless, the bankruptcy court granted Hawxhurst's motion to modify the injunction insofar as it would allow Hawxhurst to proceed against Pettibone as a nominal defendant only, and would allow Hawxhurst to recover only from Pettibone's available insurance. The bankruptcy court further limited Hawxhurst's relief by prohibiting him from diminishing or interfering with the recovery the personal injury claimants who filed timely proofs of claims may receive from the insurance under the Plan.

Pettibone presents on appeal five issues challenging the propriety of the Bankruptcy Judge's order. Pettibone first claims that the bankruptcy court erred in applying *In re Fernstrom Storage and Van Co.*, 938 F.2d 731 (7th Cir.1991) and its progeny in this case. Secondly, Pettibone claims that the bankruptcy court was without jurisdiction to consider Hawxhurst's motion to modify the permanent injunction. Thirdly, Pettibone claims that equitable considerations preclude Hawxhurst's claims against Pettibone and therefore the bankruptcy court's July 2nd order was erroneous. Fourthly, Pettibone claims that Hawxhurst did not meet its burden of proof to demonstrate lack of prejudice in order to justify the granting of relief. Pettibone finally claims that allowing Hawxhurst to proceed against Pettibone to access insurance coverage violates the terms of the Plan, the order confirming the Plan, and the Step–Up Agreement. The court will address each issue in turn.

### DISCUSSION

On an appeal from an order of the bankruptcy court, the district court reviews factual findings for clear error and reviews conclusions of law *de novo*. *In re Chappell*, 984 F.2d 775, 779 (7th Cir.1993).

A discharge under 11 U.S.C. § 1141 operates as an injunction that prevents a party from subsequently pursuing an action against a debtor if the action concerns the discharged debts. 11 U.S.C. § 524(a). The proper procedure for a creditor to follow in order to retain a claim against the debtor and thus share in the bankrupt's estate is to file a proof of claim during the bankruptcy proceedings. 11 U.S.C. §§ 501, 502; *Wilson v. Allegheny Int'l, Inc.*, 134 B.R. 282, 284 (N.D.Ill.1991). The injunction, primarily designed to protect the debtor, does not, however, enjoin a creditor from taking action against another who may also be liable for the debt. 11 U.S.C. § 524(e); *Underhill v. Royal*, 769 F.2d 1426, 1432 (9th Cir.1985).

The present case involves the applicability of the statutory injunction where a creditor attempts to proceed against the debtor subsequent to discharge for the sole purpose of establishing the debtor's liability in order to recover from a third party, the debtor's insurer. The Eleventh Circuit resolved this polemic in 1989 when the court held that a defamation suit, initiated two years prior to the debtor's bankruptcy petition, could be maintained against the debtor after the debtor's successful reorganization

in order to establish liability as a prerequisite to recovery from the insurer. *In re Jet Florida Sys., Inc.*, 883 F.2d 970, 971, 976 (11th Cir.1989) (per curiam).

The Seventh Circuit adopted the *Jet Florida* position in *In re Fernstrom Storage and Van Co.*, 938 F.2d 731 (7th Cir.1991). In *Fernstrom*, International Business Machines ("IBM") sued Fernstrom Storage and Van Company ("Fernstrom") in connection with the loss of $800,000 worth of computer equipment destroyed by a fire while the equipment was stored in a warehouse owned by Fernstrom. *Id.* at 732. Fernstrom filed for bankruptcy under Chapter 11 and IBM was named as a creditor in schedules filed with the bankruptcy court. *Id.* The debt listed in the schedules, however, was in correlation to a lease of computer equipment from IBM and not to the fire loss; and IBM filed proofs of claim for the amounts owed on the leased equipment but not for the case involving fire loss. *Id.* at 732–33. Because the bankruptcy petition of Fernstrom acted as a stay of proceedings against it, the district judge handling IBM's case dismissed the action with leave to reinstate if the bankruptcy judge modified the stay to the extent necessary to allow IBM to proceed with the case. *Id.* at 733. The bankruptcy court obliged and modified the stay because IBM stipulated that it would only seek to recover up to the limit provided in Fernstrom's insurance policies and thus its claim would be satisfied solely from the proceeds of Fernstrom's insurance. *Id.*

In affirming this decision, the Seventh Circuit held that, even though IBM failed to file a proof of claim within the time limits set by the bankruptcy court, IBM could recover from Fernstrom's insurers. *Id.* at 733. Suspending the stay was appropriate, the court stated, "where all the plaintiff seeks is a declaration of liability with no monetary consequences for the debtor, as opposed to its insurer." *Id.* at 735. Allowing the action to proceed does little or no harm to the debtor if insurance assumes the full financial responsibility for defending the litigation. *Id.* at 735–36. Because Fernstrom's insurer represented the real economic interest in the case, allowing the suit to go forward did not preju-

dice Fernstrom's ability to reorganize. *Id.* at 736.

Subsequent to *Fernstrom*, the Seventh Circuit applied the *Fernstrom* and *Jet Florida* principle to a motion for modification of a statutory injunction of discharge. In the case of *In re Shondel*, the Seventh Circuit affirmed a decision to reopen a bankruptcy case in order to modify a § 524 injunction. *In re Shondel*, 950 F.2d 1301, 1304 (7th Cir. 1991). The modification allowed a wrongful death action to proceed in state court against a debtor, even after the debtor received a discharge, in order for the plaintiff to secure a determination of liability that would serve as a basis for recovery from the debtor's insurer. *Id.* at 1304, 1307. The court reasoned that § 524(a) and § 524(e) only prevent suits with respect to the personal liability of the debtor and do not bar a determination of the liability of the debtor for purposes of accessing insurance coverage. *Id.* at 1306. Citing *Jet Florida* and *Fernstrom*, the Seventh Circuit explained that a determination of a debtor's liability in order to recover against another entity will not deplete the debtor's assets, interfere with the administration of the bankruptcy proceeding, or hinder the debtor's ability to obtain a fresh start through bankruptcy. *Id.* at 1307. The *Shondel* court concluded by noting that, although the statutory injunction of discharge is intended to provide a fresh start for the debtor, the fresh-start policy does not allow an insurer to escape its obligations merely because of the financial misfortunes of the insured. *Id.* at 1308. The Seventh Circuit reaffirmed this stance just last year. *See In re Hendrix*, 986 F.2d 195, 197 (7th Cir.1993) (reiterating that a suit to collect from insurance proceeds does not create personal liability).

Pettibone first argues that *Fernstrom* and its progeny do not apply because the insurance coverage against which Hawxhurst is allowed to proceed did not exist prior to the bankruptcy petition but was the result of written agreements entered into between Pettibone and its insurance carriers during the pendency of the bankruptcy proceedings. As a result, Pettibone argues, the rationale behind the *Fernstrom* line of cases does not

apply. Pettibone maintains that *Fernstrom* and its progeny only apply where the statutory injunction protecting the insurer would result in a windfall for the insurer, like when the insurance agreement was entered into prior to the bankruptcy petition. But when a settlement is reached between an insurer and the debtor during the bankruptcy proceedings in a good faith effort to help the debtor reorganize, the injunction should not be modified to allow the creditor to proceed against the insurer.

Hawxhurst, on the other hand, responds that American agreed to assume Northumberland's duties to defend and indemnify prior to the commencement of Pettibone's bankruptcy proceedings. The bankruptcy court found that the Step–Up Agreement between Pettibone and American was executed on May 12, 1987, after the October 31, 1986 claims bar filing date but prior to the motion to disallow unfiled claims filed in November 1987 and granted March 11, 1988. The bankruptcy court further found that both the insurance agreement and the Plan contemplated the possibility of allowing the filing of future claims. It is undisputed, however, that American was not obligated to cover Hawxhurst's claim originally, but became obligated only after agreeing with Pettibone subsequent to Northumberland's insolvency.

■ Regardless of the distinction Pettibone advances, it is evident from the plain language of § 524 of the Bankruptcy Code that the statutory injunction of discharge does not preclude a determination of a debtor's liability in order to allow the plaintiff to access indemnification from a third party. This is the true rationale underpinning the *Fernstrom* line of cases. The discharge serves only as an injunction against actions commenced to recover a debt "as a personal liability of the debtor...." 11 U.S.C. § 524(a); *Shondel*, 950 F.2d at 1306. Furthermore, the discharge does not affect the liability of third parties in regard to a debt from which the debtor is discharged. 11 U.S.C. § 524(e); *Shondel*, 950 F.2d at 1306. Where the debtor's personal liability on the debt is not affected by an action, as in the present case, the Bankruptcy Code allows the action to proceed to judgment.

As a consequence, there is no reason that *Fernstrom* and its progeny should not apply merely because the third party's putative liability arose due to agreements made during the pendency of the bankruptcy as opposed to prior to bankruptcy. The focus is on whether Hawxhurst can proceed against Pettibone nominally in order to recover from a third party who may be required to provide indemnification. Whether an obligation was assumed prior to bankruptcy or not may affect whether a creditor may ultimately collect from a debtor's insurer, but it is not relevant to whether a creditor can proceed to a judgment not collectible from a debtor.

■ Pettibone argues that a court may enjoin a creditor from suing a third party where a settlement agreement is an essential element of the reorganization and an injunction is a key component of the settlement agreement, citing *In re Drexel Burnham Lambert Group*, 960 F.2d 285 (2d Cir.1992), *cert. dismissed*, —— U.S. ——, 113 S.Ct. 1070, 122 L.Ed.2d 497 (1993). But that case involved a settlement of a class-action that contained a bar of future suits against a debtor's former directors and officers, not a bar of future suits against a debtor's insurer. The Second Circuit noted that the injunction contained in the class-action settlement agreement limiting the number of lawsuits against the debtor's former directors and officers would enable the former directors and officers to settle a large number of claims without the fear that others will file future suits. The directors and officers would not be inclined to settle without such an injunction. *Id.* 960 F.2d at 293. Moreover, the *Drexel Burnham* court merely held that the district court did not abuse its discretion under the circumstances when it approved the injunction contained in the class-action settlement agreement. *Id.* Simply because the bankruptcy court is not precluded from enjoining a suit against a third party does not mean the bankruptcy court must preserve the statutory injunction in favor of an insurer.

■ Pettibone further argues that Hawxhurst did not stipulate that he only seeks to recover from the insurance maintained by

Pettibone, but that he instead sought all the rights and benefits of a timely claimant. It is certainly critical that there must exist some indication, statement, or stipulation that monies will not be sought from a debtor itself in order to allow a creditor's case to proceed after the debtor's confirmation. *See Wilson,* 134 B.R. at 285. Nonetheless, the bankruptcy court so limited the modification of the injunction. This limit thus serves as a proper indication that Pettibone cannot be held personally liable.

■ This leads to the merits of Pettibone's second contention on appeal regarding the jurisdiction of the bankruptcy court to modify the statutory injunction of discharge. Pettibone argues that the bankruptcy court was without jurisdiction to modify the injunction because Hawxhurst failed to file a timely appeal from the March 11, 1988 order disallowing Hawxhurst's claim and the December 9, 1988 order of confirmation. Pettibone argues that Pettibone's Plan released the participating insurers from all but the allowed claims and thus bars the bankruptcy court from entertaining a motion that would allow a claimant who did not appeal the confirmation order to file a claim against an insurer. Because Hawxhurst was a known creditor and was given notice of all proceedings, Pettibone argues that Hawxhurst's request is governed by the one-year time limit provided by Fed.R.Civ.P. 60(b) and is thereby time-barred.

■ This court concludes that the bankruptcy court possessed jurisdiction to modify the injunction. Any court that issues an injunction has the authority to modify the injunction for good cause on the motion of a person adversely affected by it. *Hendrix,* 986 F.2d at 198. The power to modify a post-discharge injunction has thus been held to fall within a bankruptcy court's general powers. *Shondel,* 950 F.2d at 1309. Additionally, 11 U.S.C. § 350(b) allows a bankruptcy court to reopen closed cases for cause.

The Seventh Circuit recognizes a broad policy in favor of reopening cases for cause that includes reopening a bankruptcy case in order to modify a permanent injunction. *Id.* at 1304.

■ Moreover, the bankruptcy court correctly recognized that it retained jurisdiction under paragraph four of its order of confirmation to entertain matters involving claims attempted to be brought subsequent to confirmation. The bankruptcy court further retained jurisdiction under paragraph eighteen of the order of confirmation to entertain matters arising in connection with the rights and obligations of the insurance companies under their policies or agreements, to enter orders enforcing and implementing the Plan, to resolve disputes arising under or in connection with the Plan, and to correct defects or omissions in the Plan as may be necessary to carry out the purposes and intent of the Plan. *See In re Pettibone Corp.,* 156 B.R. 220, 234–35 (Bankr.N.D.Ill.1993).

■ As to whether Hawxhurst's failure to appeal the bankruptcy court's disallowance of his claim or the order of confirmation acts as a waiver of his right to petition the bankruptcy court to modify the injunction, resort to the *Fernstrom* line of cases again resolves the issue. *Fernstrom* pronounced that a creditor's recovery from a debtor's insurer is not barred by the creditor's failure to file a timely proof of claim. *Fernstrom,* 938 F.2d at 733. In *Hendrix,* the court further held that any party adversely affected by the statutory injunction of discharge may move to modify the injunction, even if that party never filed an appearance in the bankruptcy proceeding whatsoever. *Hendrix,* 986 F.2d at 197–198. Accordingly, Hawxhurst's failure to appeal the order disallowing his claim or the order confirming Pettibone's Plan similarly does not bar him from subsequently seeking a modification of the statutory injunction.[2]

---

2. Technically, a party need not even obtain a modification of the injunction in order to proceed against the insurer. *Hendrix,* 986 F.2d at 199. But the bankruptcy court in this case found that an order from it was required in order to allow Hawxhurst's claim to go forward. *Petti-* *bone,* 156 B.R. at 232. The bankruptcy court's finding that Hawxhurst was adversely affected by the injunction and thus needed to secure an order from the bankruptcy court is not clearly erroneous.

Pettibone next contends that principles of equity preclude Hawxhurst's claim against Pettibone's insurer. Pettibone invokes the defense of latches, arguing that the court should not permit Hawxhurst, a "dilatory creditor," to sit on the sideline during the bankruptcy proceedings and then assert his rights to the prejudice of all involved in the bankruptcy proceedings. This robs the participants in Pettibone's bankruptcy reorganization of the benefit of finality. *See In re Barsky,* 85 B.R. 550, 554 (Bankr.C.D.Cal. 1988) (to successfully invoke latches, individual must show an inexcusable delay in the assertion of a known right that prejudices the party asserting latches), *aff'd without opinion,* 933 F.2d 1013 (9th Cir.1991). Pettibone seeks a determination that Hawxhurst's four-year delay precludes him from proceeding against American as a matter of law.

This court, however, will afford great deference to the bankruptcy court's exercise of its equitable powers over the debtor's estate and the related matters over which the bankruptcy court enjoys dominion and command. Equity is not to be dispensed according to a judge's sensibilities nor according to his or her opinion for the uprightness of the parties. *Polk Bros., Inc. v. Forest City Enters., Inc.,* 776 F.2d 185, 193 (7th Cir.1985). "[E]ven the wicked have a right to treatment according to the rules." *Id.* Thus, equity is not to be employed merely to disapprove of a party's conduct; although a party's fault may become relevant to the question of what remedy, if any, he or she is entitled to. *Id.* "When the plaintiff's wrongful conduct did not lead to a situation from which the plaintiff seeks to take further advantage, [courts may] grant equitable relief notwithstanding prior transgressions." *Id.* at 194.

Here, Hawxhurst is not attempting to take advantage of his own wrongdoing. And Hawxhurst's failure and delay in pursuing his rights as against Pettibone, if that can be called a transgression, was not, on balance, so severe as to deny him the relief he sought. In light of the premise inaugurated by *Jet Florida, Fernstrom,* and *Shondel* that a plaintiff may, without prejudicing the debtor, maintain a suit against a debtor nominally in order to recover from an insurer, even where the plaintiff was well-aware of his or her rights under bankruptcy law and waited a long period of time before asserting his or her rights, Pettibone's protestations under the rubric of equity wither.

The court next turns to Pettibone's claim that Hawxhurst failed to meet his burden of proving a lack of prejudice to the debtor and other creditors. Pettibone claims that Hawxhurst set forth no evidence to show that Pettibone and the other creditors would not suffer prejudice if the injunction was modified, and further argues that Pettibone sufficiently demonstrated prejudice. Pettibone asserts, *inter alia,* that the insurance companies possessed a legitimate expectation that additional claimants would no longer have the opportunity to assert a claim after confirmation of the Plan.

A bankruptcy judge's decision to modify the statutory injunction remains a matter of discretion only to be reversed if abused. *Shondel,* 950 F.2d at 1304. The bankruptcy courts must be afforded great leeway in reopening their judgments in order to prevent harsh inequities, to perform substantial justice, or to protect the integrity of their judgments. *See Grand Union Equip. Co. v. Lippner,* 167 F.2d 958, 960 (2d Cir. 1948) (modification of injunction proper because bankruptcy court, as court of equity, possesses power to change the operation of an injunction when its enforcement becomes inequitable) (cited with approval by *Shondel,* 950 F.2d at 1306).

The factual findings of the bankruptcy court on the issue of prejudice are not clearly erroneous. The bankruptcy court found that Pettibone's ability to get insurance coverage at competitive cost in the future would not be impaired by allowing Hawxhurst's claim to proceed, that the passage of time has not hindered Pettibone's ability to defend the Hawxhurst action, and that the prosecution of Hawxhurst's claim does not prejudice American. *Pettibone,* 156 B.R. at 226–27.

In relation to potential prejudice to American, the bankruptcy court found that American was not prejudiced because American assumed the obligations under the insurance

agreement and the Plan without knowing the exact number of existing claims for which it would be liable. The insurance agreement and the Plan left open the possibility of the allowance of future claims. In fact, the bankruptcy court had placed at issue whether Hawxhurst's personal injury claim was covered by Pettibone's insurance and invited evidence on the subject. Brief of Appellants, at Exhibit C. The bankruptcy court then found, in its July 2, 1993 order, that American's insurance policy would cover Hawxhurst's claim and therefore a modification allowing Hawxhurst to recover would not prejudice American "because it will simply be paying what it originally agreed to pay in its insurance policy." *Pettibone,* 156 B.R. at 233. Therefore, American "is not being called upon here to pay more than it would otherwise be liable to pay under its insurance agreements with Pettibone and the confirmed Plan." *Id.* at 234.

Pettibone relies upon *In re Martha Washington Hosp.,* 157 B.R. 392 (N.D.Ill.1993) for the proposition that Hawxhurst must show neither Pettibone nor the other creditors will be injured by the modification of the injunction, and further that a creditor will be enjoined from prosecution of a claim where a layer of self-insurance exists beneath coverage. But in that case, the debtor was entirely self-insured. Both the bankruptcy court and the district court found that the cost of defending the claim would deplete the assets of the bankruptcy estate. *Id.* at 395. Thus, the balance of the equities favored the debtor.

Based on the evidence collected during the bankruptcy court's four-day hearing, and the *Fernstrom* rationale that a debtor is not normally prejudiced by the maintenance of an action that ultimately gains recovery solely from insurance proceeds, the conclusion of the bankruptcy court (which is familiar with the history of Pettibone's reorganization) that the equities lie with Hawxhurst is not clearly erroneous. The bankruptcy court therefore did not abuse its discretion in modifying the statutory injunction of discharge to permit Hawxhurst to proceed against Pettibone in order to establish liability as a prerequisite to recovery from insurance under the careful limitations set by the bankruptcy court.

Finally, Pettibone argues that the bankruptcy court's order allowing Hawxhurst to proceed against Pettibone to access insurance coverage violated the terms of Pettibone's Plan, the order confirming the Plan, and the Step–Up Agreement. It is not disputed that a personal injury claimant who failed to file a proof of claim can not recover under the Plan. But, for the same reasons discussed above in relation to the bankruptcy court's jurisdiction, the Plan actually allowed the bankruptcy court to entertain additional matters concerning a product liability claimant. Pettibone cannot point to any provision in the Plan, order of confirmation, or Step–Up Agreement specifically preventing a product liability claimant from pursuing an action against Pettibone under the *Fernstrom* rationale to access the insurance coverage provided by one of Pettibone's insurers under the Plan. Paragraph eight of the order of confirmation operates as an injunction protecting Pettibone personally. The Plan and order of confirmation only entitle claimholders to distribution under the Plan, if their claims were allowed. But Hawxhurst will not receive distribution of Pettibone's assets and is not proceeding pursuant to the Plan.

Unlike *In re Specialty Equip. Co.,* 3 F.3d 1043 (7th Cir.1993) or *In re Fairchild Aircraft Corp.,* 128 B.R. 976 (Bankr.W.D.Tex. 1991), both cases upon which Pettibone places much emphasis, the bankruptcy court's order in this case does not impose a plan of reorganization on the parties different from the one agreed upon during the bankruptcy process or that is substantially consummated at the time of the request for relief. On the contrary, the bankruptcy court found that the Step–Up Agreement incorporated in the Plan covered Hawxhurst's claim.

Moreover, paragraph four of the Step–Up Agreement states that,

for the 1981–1982 Policy Year and for all claims relative to the 1980–1981 Policy Year as to which the Automatic Stay was not modified prior to Confirmation of the Plan, upon confirmation of the Plan, insur-

er will defend and indemnify Pettibone under the Policy against the claims, and shall defend such claims without respect to the amount of any settlements and Judgments provided.

Also, according to the Step–Up Agreement, American assumed Northumberland's duties prior to the bankruptcy petition, although "contingent upon Pettibone satisfying its self-insured retention...." Accordingly, American undertook to pay for, defend, or settle the claims as to which the automatic stay was not modified prior to confirmation, which includes Hawxhurst's claim falling within the 1981–1982 policy year.

In conclusion, Hawxhurst may prosecute its case against Pettibone as long as it only seeks a declaration of liability that can serve as a predicate for recovering against American pursuant to *Fernstrom* and its progeny. The bankruptcy court conscientiously accomplished the correct and fair result. The injunction, as modified, provides ample protection for Pettibone and its insurers by limiting the possibility that Hawxhurst would recover more than the allowed claims while at the same time equitably allowing Hawxhurst to recover available compensation to which he may be entitled under state law. Hawxhurst will only be able to recover amounts above the deductible and American will not pay more than it otherwise would be liable to pay under its agreements with Pettibone. Normally Pettibone would pay from its self-insured retention, but Pettibone's obligation to Hawxhurst is discharged under the Plan, leaving Hawxhurst to recover any amount that would not have been satisfied from Pettibone under the self-insured retention from Pettibone's insurer, American.

The court's conclusion does not guarantee success for Hawxhurst, who must still succeed under state law. The court will leave it up to Hawxhurst to perfect any recovery he may be entitled from American. In this pursuit he may run into some obstacles. Illinois does not recognize direct actions against insurers. *Fernstrom*, 938 F.2d at 735 n. 1 (citing *Richardson v. Economy Fire & Cas. Co.*, 109 Ill.2d 41, 49–51, 92 Ill.Dec. 516, 520, 485 N.E.2d 327, 331 (1985); *Zegar v. Sears, Roebuck & Co.*, 211 Ill.

App.3d 1025, 156 Ill.Dec. 454, 458, 570 N.E.2d 1176, 1180 (1991)). But this concern has not prevented the courts from recognizing the general precept that a bankruptcy court may modify a statutory injunction of discharge in order to allow a personal injury claimant to proceed against a debtor nominally in a lawsuit designed to recover solely from an insurer. *See Shondel*, 950 F.2d at 1308 (Illinois's rule that prohibits direct actions against insurers means that personal injury claimant must obtain judgment against debtor as a prerequisite to recovering from the insurer; although the rule says nothing about when or how such judgment may be obtained); *Hendrix*, 986 F.2d at 200 (whether insurance company is liable to its insured's victim is question left unanswered by bankruptcy court's modification of injunction; how victim collects damages judgment obtained against the insured from insurance company an issue of state law).

### CONCLUSION

For the foregoing reasons, the bankruptcy court's judgment is affirmed.

IT IS SO ORDERED.