Robert HAWXHURST, Plaintiff–Appellee,

v.

PETTIBONE CORPORATION, et al., Defendants–Appellants.

No. 94–1508.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 19, 1994.

Decided Nov. 14, 1994.

Richard L. Hirsh, Oak Brook, IL (argued), for appellee.

Robert D. Kolar (argued), Thomas M. Sheehan, Kolar & Associates, Chicago, IL, for appellants.

Before BAUER and MANION, Circuit Judges, and GRANT, District Judge.*

BAUER, Circuit Judge.

In this appeal, Pettibone Corporation challenges a decision of the bankruptcy court which modified the statutory post-confirmation injunction imposed pursuant to 11 U.S.C. § 524 to permit Robert Hawxhurst to proceed nominally in litigation against Pettibone in order to recover from its insurers. The district court affirmed the decision of the bankruptcy court, and we affirm.

## I.

On October 28, 1983, Hawxhurst, a former employee of TWA Airlines, filed a personal injury suit against Pettibone and other defendants in New York state court under a theory of product liability. The complaint alleged that Hawxhurst was injured on January 6, 1982, when a baggage tractor manufactured by Pettibone overturned upon him. Hawxhurst was represented by attorney Charles Barnett in the state court proceedings.

Pettibone filed a petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, in the Northern District of Illinois on January 31, 1986. This petition automatically stayed Hawxhurst's personal injury action against Pettibone under 11 U.S.C. § 362. Barnett was notified of Pettibone's petition and the automatic stay in a letter from Pettibone's attorney in the Hawxhurst litigation. Barnett was also twice served by mail with official notice of the bar date for filing proofs of claim in the bankruptcy court against Pettibone's estate, which was October 31, 1986. Although Hawxhurst was required to file a timely proof of claim under Bankruptcy Rule 3003(c)(2) because he was not a scheduled creditor, Hawxhurst failed to file a proof of claim by the October 31, 1986, deadline.

Pettibone's Official Unsecured Creditors' Committee subsequently filed a motion in the bankruptcy court to disallow all personal in-

---

* The Honorable Robert A. Grant of the United States District Court for the Northern District of Indiana is sitting by designation.

jury claims for which no proof of claim had been filed. Notice of the motion was sent to all affected parties or their counsel, including Barnett on behalf of Hawxhurst. Neither Barnett nor Hawxhurst filed an objection to the motion or appeared in the bankruptcy court at a hearing concerning the motion. The bankruptcy court granted the Committee's motion on March 11, 1988, and entered an order disallowing the claims of Hawxhurst and forty-six other personal injury claimants listed in the order. Hawxhurst did not appeal. Pettibone's Chapter 11 reorganization plan was confirmed by the bankruptcy court on December 9, 1988. The discharge of Pettibone's debts under Chapter 11 operated as an injunction against the commencement or continuation of any action to collect a discharged debt. *See* 11 U.S.C. § 524.

Pettibone held several insurance policies for product liability claims prior to the filing of its bankruptcy petition. Northumberland General Insurance Company ("Northumberland") provided a layer of coverage above Pettibone's deductible, or self-insured retention ("SIR"), with respect to Hawxhurst's claim. Northumberland was also obliged to defend Pettibone in personal injury litigation. American Centennial Insurance Company ("American") provided an additional $5 million in coverage beyond the Northumberland coverage with respect to Hawxhurst's claim. Northumberland became insolvent in July, 1985, and Pettibone's excess insurers, including American, refused to defend Pettibone in its personal injury litigation.

Pettibone's reorganization plan included a series of "step-up agreements" with the excess insurers, under which the insurers agreed to defend Pettibone and pay the personal injury claims up to their policy limits after Pettibone had fully met its SIR. Under the plan, personal injury claimants are divided into groups by policy year, share pro rata the burden of Pettibone's SIR, and hold unsecured claims against the estate for their shares of the SIR. The claimants recover pro rata the aggregate of personal injury claims exceeding the relevant SIR from the proceeds of available excess insurance coverage up to the policy limits. Litigation defense costs are credited against the policy coverage.

On December 3, 1992, almost four years after the confirmation of Pettibone's plan, Hawxhurst filed a motion in the bankruptcy court seeking leave to file a late proof of claim and to modify the post-confirmation injunction imposed pursuant to 11 U.S.C. § 524. Hawxhurst also moved for reconsideration of the bankruptcy court's order of March 11, 1988, which disallowed his personal injury claim, and sought to modify the bankruptcy court's order confirming Pettibone's plan. Through these motions, Hawxhurst sought to recover against Pettibone as a "class four creditor," or to the same extent as the other personal injury claimants who filed timely proofs of claim.

The bankruptcy court denied Hawxhurst's motions to file a late proof of claim and to reconsider its March 11, 1988, order. 156 B.R. 220, 227–31 (N.D.Ill.1993). The bankruptcy court, however, granted Hawxhurst's motion to modify the post-confirmation injunction to permit Hawxhurst to proceed nominally against Pettibone in order to collect insurance proceeds notwithstanding Hawxhurst's inability to file a late proof of claim. *Id.* at 231–35. The bankruptcy court imposed the following limitations on Hawxhurst's right of recovery: (1) Hawxhurst could recover against Pettibone's insurers only pursuant to the confirmed plan and subject to the payment conditions and procedures imposed on timely claimants; (2) Hawxhurst could recover no more than if he had timely filed an allowed claim; (3) Hawxhurst could not recover against Pettibone's non-insurance assets and could not recover as a class four creditor; and (4) Hawxhurst could only recover insurance proceeds available after timely claimants were paid the maximum their claims were entitled to recover. *Id.* at 232–34. Pettibone appealed the bankruptcy court's modification of the post-confirmation injunction, and the district court affirmed. 163 B.R. 989, 999 (N.D.Ill.1994).

## II.

We review the conclusions of law of the bankruptcy court and the district court *de novo. In re Chappell,* 984 F.2d 775, 779

(7th Cir.1993). The bankruptcy court's factual findings are reviewed for clear error. *Id.* Pettibone raises several challenges to the bankruptcy court's modification of the post-confirmation injunction, which we will address in turn.

### A.

■ Pettibone first contends that the bankruptcy court had no subject matter jurisdiction to modify the post-confirmation injunction. Subject matter jurisdiction cannot be waived and may be challenged by a party or raised *sua sponte* by the court at any point in the proceedings. *Jackson v. Consolidated Rail Corp.,* 717 F.2d 1045, 1055 (7th Cir.1983), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1000, 79 L.Ed.2d 233 (1984).

Pettibone challenges the subject matter jurisdiction of the bankruptcy court on the ground that Hawxhurst's motion for reconsideration of its March 11, 1988, order was untimely. Federal Rule of Civil Procedure 60 governs motions for reconsideration of an order disallowing a claim against the debtor's estate. Fed.R.Bankr.P. 9024. Rule 60(b) required that Hawxhurst's motion be brought within one year of the date of the order. Pettibone argues that once the bankruptcy court determined that Hawxhurst's motion for reconsideration was untimely, 156 B.R. at 230–31, it had no jurisdiction to modify the discharge injunction.

■ Pettibone's argument is premised upon an assumption that a claimant must be a participant in the bankruptcy proceeding in order to obtain a declaration of liability against the debtor outside of bankruptcy. This assumption is unwarranted under *In re Fernstrom Storage and Van Co.,* 938 F.2d 731 (7th Cir.1991), and its progeny. In *Fernstrom,* 938 F.2d at 733, 737, we affirmed an order of the bankruptcy court modifying the automatic stay imposed pursuant to 11 U.S.C. § 362 to permit a claimant, who had failed to file a proof of claim in the bankrupt-

cy court, to continue a civil suit seeking a declaration of liability against a debtor who had filed a petition for relief under Chapter 11. We subsequently relied on *Fernstrom* to affirm a bankruptcy court's modification of a discharge injunction imposed pursuant to 11 U.S.C. § 524 to permit a claimant to seek a declaration of liability against a debtor. *In re Shondel,* 950 F.2d 1301, 1306–09 (7th Cir. 1991); *accord In re Hendrix,* 986 F.2d 195, 197–200 (7th Cir.1993). The bankruptcy court retained jurisdiction to modify the discharge injunction under *Hendrix,* 986 F.2d at 197–98, and *Shondel,* 950 F.2d at 1308–09.[1]

■ Pettibone also contends that the bankruptcy court was divested of subject matter jurisdiction to modify the discharge injunction when it entered the order disallowing Hawxhurst's claim on March 11, 1988. Pettibone, citing *Bursch v. Beardsley & Piper,* 971 F.2d 108, 114 (8th Cir.1992), asserts that, unlike the discharged claims in *Fernstrom, Shondel,* and *Hendrix,* Hawxhurst's disallowed claim was never recognized in the bankruptcy proceeding and, consequently, its insurers cannot be derivatively liable for the claim because Pettibone was never principally liable for it. *See Bursch,* 971 F.2d at 114. We reject this challenge to the bankruptcy court's jurisdiction because it reflects a fundamental *misunderstanding of the bankruptcy court's order.*

■ Pettibone is correct that a disallowed claim may not share in the distribution of the debtor's assets in bankruptcy. *See* 3 *Collier on Bankruptcy* ¶ 502.02 at 502–18 (15th ed. 1994). The bankruptcy court's order is consistent with this proposition since it denied Hawxhurst's motion to file a late proof of claim and prohibited Hawxhurst from participating in the reorganization plan as a class four creditor. The mere fact that a claimant is unable to participate in a reorganization plan, however, does not relieve any other entity from liability for the debt, nor does it negate the existence of the debt.

---

1. We note that under *Hendrix,* Hawxhurst was not required to request a modification of the discharge injunction in order to proceed against Pettibone's insurers because Hawxhurst was not seeking to impose personal liability on Pettibone. *Hendrix,* 986 F.2d at 199. The bankruptcy court, however, found that it was required to modify the injunction in order to prevent Hawxhurst from recovering insurance proceeds at the expense of timely claimants. 156 B.R. at 232. Hawxhurst has not challenged this ruling on appeal.

*Shondel*, 950 F.2d at 1306–08; *Fernstrom*, 938 F.2d at 738. Permitting a suit to obtain a declaration of liability against a debtor is not equivalent to authorizing the recovery of a barred claim in a bankruptcy proceeding. Hawxhurst is not a claimant in Pettibone's reorganization under the terms of the bankruptcy court's order. The precedential force of the Eighth Circuit's analysis in *Bursch* in this circuit is also vitiated by our holding in *Fernstrom* that a claimant's failure to file a proof of claim in reorganization proceedings under Chapter 11 does not bar the claimant from recovering against the debtor's insurers. *Fernstrom*, 938 F.2d at 733. Pettibone's jurisdictional arguments fail.

### B.

 Pettibone contends that Hawxhurst's motion to modify the discharge injunction is barred under the doctrine of res judicata. Under res judicata, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981). In order for res judicata to apply, there must be (1) a final judgment on the merits in a prior action; (2) identity of the cause of action in both the prior and subsequent suits; and (3) identity of parties or privies in these suits. *Crop–Maker Soil Services, Inc. v. Fairmount State Bank*, 881 F.2d 436, 439 (7th Cir.1989) (citation omitted). Res judicata reflects fundamental public policy that there be an end to litigation, which is particularly strong in the bankruptcy context. *Id.* at 439–40.

 Pettibone asserts that the bankruptcy court's order of March 11, 1988, disallowing Hawxhurst's claim, from which Hawxhurst did not appeal, is res judicata as to this claim. While we agree with Pettibone that this is a final judgment on the merits[2] and the parties are identical, we cannot accept Pettibone's argument that there is an identity of the causes of action. Although none of the debtors in *Fernstrom*, *Shondel*, and *Hen-*

*drix* invoked the res judicata doctrine, the clear thrust of these decisions is that the doctrine does not apply when a claimant merely seeks to proceed nominally against a debtor. Hawxhurst was not required to file a proof of claim in the bankruptcy court in order to proceed against Pettibone's insurers outside of bankruptcy, *Fernstrom*, 938 F.2d at 733, so it is difficult to see how an order barring such a claim in the bankruptcy proceeding because it was untimely can have any preclusive effect outside of that proceeding. Under *Hendrix*, Hawxhurst was not even required to seek a modification of the discharge injunction.[3] The real economic interests affected by Hawxhurst's present action are those of Pettibone's insurers; a declaration of liability obtained against Pettibone merely operates as "a prerequisite to recovery against another entity." *Fernstrom*, 938 F.2d at 734 (citation omitted). No personal liability against Pettibone will be established if Hawxhurst's action is successful. We conclude that the causes of action are not identical, and the bankruptcy court's order of March 11, 1988, has no res judicata effect with respect to Hawxhurst's present action.

### C.

 Pettibone attempts to distinguish *Fernstrom* and its progeny from this case on the ground that the insurance coverage from which Hawxhurst is seeking recovery did not exist prior to the filing of Pettibone's bankruptcy petition. Pettibone asserts that the rationale of *Fernstrom* does not apply when no insurance coverage would be available to any claimant but for the reorganization plan. Pettibone argues that *Fernstrom* was "really" only an estoppel case, because the pending bankruptcy proceedings of the debtor were brought to the attention of the claimant for the first time shortly before trial. In a related argument, Pettibone contends that permitting Hawxhurst to proceed nominally against it outside of bankruptcy violates the terms of the reorganization plan, the bankruptcy court's order confirming the plan, and

---

**2.** A default judgment is a final judgment with res judicata effect. *Riehle v. Margolies*, 279 U.S. 218, 225, 49 S.Ct. 310, 313, 73 L.Ed. 669 (1929).

**3.** *See supra* note 1.

the step-up agreement between Pettibone and American.

Our analysis in *Fernstrom* cannot be cabined within the narrow boundaries proposed by Pettibone. Although *Fernstrom* recognized the considerable hardship imposed on the claimant (which had spent six years prosecuting its action) if its suit in the district court was not permitted to proceed, nothing in *Fernstrom, Shondel,* or *Hendrix* suggests that modification of the discharge injunction is only available in such a situation. The rationale of *Fernstrom* is that a nominal suit, if successful, will not create a personal liability of the debtor and therefore "will neither deplete the debtor's assets or otherwise interfere with the administration of the bankruptcy proceeding, nor hinder the debtor's fresh start at the close of the proceeding." *Fernstrom,* 938 F.2d at 734; *accord Hendrix,* 986 F.2d at 197; *Shondel,* 950 F.2d at 1307. Another reason for permitting modification of the discharge injunction is that the discharge of a debt under 11 U.S.C. § 524 does not affect the liability of any other entity for the debt, including the insurance company. *Hendrix,* 986 F.2d at 197. The diligence of the claimant in pursuing his claim prior to bankruptcy is simply not a determining factor in whether the discharge injunction should be modified. The fact that the insurance coverage from which Hawxhurst is seeking recovery did not exist prior to the filing of Pettibone's bankruptcy petition also has no relevance. Hawxhurst's action will not affect the recovery of timely bankruptcy claimants because, under the terms of the bankruptcy court's order, Hawxhurst may only recover insurance proceeds available after these claimants are paid the maximum their claims are entitled to recover. 156 B.R. at 232–33.

We also reject Pettibone's assertion that the bankruptcy court's order violates the reorganization plan, the confirmation order, and the step-up agreement between Pettibone and American. The bankruptcy court retained jurisdiction under paragraphs four and eighteen of its confirmation order to modify the discharge injunction with respect to Hawxhurst's claim. *See* 156 B.R. at 234. Pettibone has pointed to nothing in its reorganization plan which prohibits any claimant from proceeding nominally against it under *Fernstrom.* Hawxhurst's claim is included within paragraph four of the step-up agreement, which obligated American to defend and indemnify Pettibone for all claims relative to the 1981–1982 policy year upon confirmation of the plan.[4]

### D.

Pettibone's final challenge to the bankruptcy court's order is that laches and other equitable considerations preclude Hawxhurst from obtaining a declaration of liability. The doctrine of laches bars a party's rights when the party has unreasonably delayed their assertion so as to cause prejudice to the opposing party. *Lake Caryonah Improvement Ass'n v. Pulte Home Corp.,* 903 F.2d 505, 509 (7th Cir.1990). We review the decision whether to invoke laches for an abuse of discretion. *Id.*

Neither the bankruptcy court nor the district court abused its discretion in holding that Hawxhurst's claim was not barred by laches because Pettibone has failed to show prejudice resulting from the continuation of Hawxhurst's action.[5] Pettibone

---

4. Paragraph four of the step-up agreement states: [F]or the 1981–1982 Policy Year and for all claims relative to the 1980–1981 Policy Year as to which the Automatic Stay was not modified prior to Confirmation of the Plan, upon confirmation of the Plan, insurer will defend and indemnify Pettibone under the Policy against the claims without respect to the amount of any settlements and Judgments provided.
Pettibone asserts that "all claims" in this paragraph refers only to all timely allowed bankruptcy claims. We do not agree. Moreover, even if Pettibone's interpretation of paragraph four is correct, this argument is not one for Pettibone to

make. Hawxhurst is merely seeking to obtain a declaration of liability against Pettibone; American's obligation to provide coverage for the claim is not relevant to the success of this action.

5. Pettibone's assertion that the bankruptcy and district courts erroneously required Pettibone to prove prejudice is without merit. Laches is an affirmative defense which is required to be proved by the party raising it. *E.g., Nuss v. Office of Personnel Management,* 974 F.2d 1316, 1318 (Fed.Cir.1992). With respect to Pettibone's other equitable arguments, the district court required Hawxhurst to prove a lack of prejudice to

knew that it would have to defend Hawxhurst's claim from October 28, 1983, the date of its filing, until the bar date of October 31, 1986. The bankruptcy court correctly held that Hawxhurst is not responsible for any failure by Pettibone to prepare a defense during this period. 156 B.R. at 226–27. The bankruptcy court further found, not clearly erroneously, that Pettibone has not demonstrated that any available evidence during the three-year period is now unavailable because of Hawxhurst's delay. *Id.* at 227.

 Pettibone also asserts that equity requires reversal of the bankruptcy court's order because Pettibone and timely claimants will be prejudiced by permitting Hawxhurst to proceed outside bankruptcy. In modifying the discharge injunction, "the bankruptcy court should exercise its equitable powers with respect to substance and not technical considerations that will prevent substantial justice." *Shondel*, 950 F.2d at 1304. The bankruptcy court did not abuse its discretion in concluding that equitable considerations weigh in favor of Hawxhurst. There has been no showing that Pettibone's ability to defend the suit has been hindered. The costs to Pettibone and American of defending this litigation were also present in *Fernstrom*, *Shondel*, and *Hendrix*, and thus are not sufficient to prevent Hawxhurst's action. The bankruptcy court found that the impact of Hawxhurst's claim on Pettibone's future insurance premiums was indefinite and speculative. 156 B.R. at 226. American is not prejudiced by the bankruptcy court's order because American assumed its obligations without knowing the number of existing claims for which it would be liable, and American will be paying no more than what it originally agreed to pay under the insurance policy.

### III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

Pettibone resulting from the continuation of the action, and found that Hawxhurst had met this