In re Roosevelt DAVIS, Jr., Debtor.

Roosevelt Davis, Jr., Plaintiff,

v.

Illinois State Police Federal Credit Union, Defendant.

Bankruptcy No. 96 B 11392.
Adversary No. 99–A–00130.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Feb. 1, 2000.

Roosevelt Davis, Jr., Bolingbrook, IL, pro se.

Elizabeth A. Bates, Huck, Bouma, Martin, Jones & Bradshaw, P.C., Wheaton, IL, for defendant.

### MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the motion of the Illinois State Police Federal Credit Union (the "Credit Union") for summary judgment pursuant to Federal Rule of Bankruptcy Procedure 7056. For the reasons set forth herein, the Court grants the motion, in part, and dismisses the complaint.

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a), formerly known as General Rule 2.33(A), of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

### II. APPLICABLE STANDARDS FOR SUMMARY JUDGMENT

In order to prevail on a motion for summary judgment, the movant must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) reads in part:

> [T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). *See also Dugan v. Smerwick Sewerage Co.*, 142 F.3d 398, 402 (7th Cir.1998). The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Trautvetter v. Quick*, 916 F.2d 1140, 1147 (7th Cir.1990); *Farries v. Stanadyne/Chicago Div.*, 832 F.2d 374, 378 (7th Cir.1987) (quoting *Wainwright Bank & Trust Co. v. Railroadmens Federal Sav. & Loan Ass'n of Indianapolis*, 806 F.2d 146, 149 (7th Cir.1986)). Where the material facts are not in dispute, the sole issue is whether the moving party is entitled to a judgment as a matter of law. *ANR Advance Transp. Co. v. International Bhd. of Teamsters, Local 710*, 153 F.3d 774, 777 (7th Cir.1998).

In 1986, the United States Supreme Court decided a trilogy of cases which encourage the use of summary judgment as a means to dispose of factually unsupported claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett*, 477 U.S.

317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Matsushita,* 475 U.S. at 585–86, 106 S.Ct. 1348; *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

All reasonable inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Parkins v. Civil Constructors of Ill., Inc.,* 163 F.3d 1027, 1032 (7th Cir. 1998). The existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under applicable law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Frey v. Fraser Yachts,* 29 F.3d 1153, 1156 (7th Cir.1994). "Summary judgment is not an appropriate occasion for weighing the evidence; rather the inquiry is limited to determining if there is a genuine issue for trial." *Lohorn v. Michal,* 913 F.2d 327, 331 (7th Cir.1990).

Local Rule 402.M of the Bankruptcy Rules adopted for the Northern District of Illinois requires the party moving for summary judgment to file a detailed statement ("402.M statement") of material facts that the movant believes are uncontested. Local Bankr.R. 402.M. The 402.M statement "shall consist of short numbered paragraphs, including, within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion." *Id.*

The Credit Union filed a 402.M statement that substantially complied with the requirements of Rule 402.M. It contained numbered paragraphs setting out assertedly uncontested facts with reference to parts of the record. Additionally, the Credit Union furnished other supporting materials relied upon to support the facts set forth in each paragraph.

The party opposing a summary judgment motion is required by Local Rule 402.N to respond ("402.N statement") to the movant's 402.M statement, paragraph by paragraph, and to set forth any material facts that would require denial of summary judgment, specifically referring to the record for support of each denial of fact. Local Bankr.R. 402.N. The opposing party is required to respond "to each numbered paragraph in the moving party's statement" and make *"specific references to the affidavits, parts of the record, and other supporting materials relied upon."* Local Bankr.R. 402.N(3)(a) (emphasis added). Most importantly, "[a]ll material facts set forth in the [402.M] statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party." Local Bankr.R. 402.N(3)(b).

■ Roosevelt Davis, Jr. (the "Debtor") has not technically complied with Rule 402.N. He did not respond to each numbered paragraph in the Credit Union's 402.M statement and did not make any references to parts of the record on which he relied. Rather, the Debtor simply recited the Credit Union's numbered paragraphs, failed to respond to about half of them, and after the remaining half, noted in bold typeface that he "objected" to that paragraph without further reference to the record for support of each "objection," if same was intended as a denial of that particular fact. This is insufficient for true compliance with Rule 402.N. Blanket objections do not serve the purpose of framing the pleadings at bar or making specific references to those parts of the record on which the party opposing the summary judgment relies to show a material factual dispute. Furthermore, the Court will not go outside of the papers so designated to other parts of the record.

■ In addition, the Debtor has not complied with Rule 402.N(3)(b) by setting forth additional facts in separate numbered paragraphs which are material, undisputed and serve as the factual predicate for denial of the relief sought by the Credit Union. The Debtor has furnished his

own affidavit and other papers, the significance of which is not always clear or self-evident, but the Court has reviewed and considered those specific references upon which the Debtor argues in opposition to the motion at bar. Moreover, the Debtor's memorandum of law in response to the motion for summary judgment makes general, non-specific references to the depositions of Jeff Smith and William Townsend in support of his arguments that summary judgment should be denied. The Court is not obliged to search through entire transcripts to find whatever portions of such testimony upon which the Debtor relies. Nor is the Court obliged to sift through the record furnished and designated for purposes of the summary judgment motion to ferret out those parts relied upon by the Debtor in opposition to the motion.

The Seventh Circuit has upheld strict application of local rules regarding motions for summary judgment. See Dade v. Sherwin–Williams Co., 128 F.3d 1135, 1140 (7th Cir.1997); Feliberty v. Kemper Corp., 98 F.3d 274, 277–78 (7th Cir.1996); Bourne Co. v. Hunter Country Club, Inc., 990 F.2d 934, 938 (7th Cir.), cert. denied, 510 U.S. 916, 114 S.Ct. 308, 126 L.Ed.2d 256 (1993); Schulz v. Serfilco, Ltd., 965 F.2d 516, 519 (7th Cir.1992); Maksym v. Loesch, 937 F.2d 1237, 1240–41 (7th Cir. 1991).

██ Local Bankruptcy Rules 402.M and 402.N are patterned after and substantially similar to Local District Court Rules 12(m) and 12(n). The precedents decided about the latter are instructive and applicable to the former. Compliance with Local Rules 402.M and 402.N is not a mere technicality. Courts rely greatly upon the information presented in these statements in separating the facts about which there is a genuine dispute from those about which there is none. American Ins. Co. v. Meyer Steel Drum, Inc., 1990 WL 92882 at *7 (N.D.Ill. June 27, 1990). The statements required by Rule 402 are not merely superfluous abstracts of evidence. Rather, they "are intended to

alert the court to precisely what factual questions are in dispute and point the court to specific evidence in the record that supports a party's position on each of these questions. They are, in short, roadmaps, and without them the court should not have to proceed further, regardless of how readily it might be able to distill the relevant information on its own." Waldridge v. American Hoechst Corp., 24 F.3d 918, 921 (7th Cir.1994).

██ "Although civil litigants who represent themselves ("pro se") benefit from various procedural protections not otherwise afforded to the ordinary attorney-represented litigant ... pro se litigants are not entitled to a general dispensation from the rules of procedure or court-imposed deadlines." Jones v. Phipps, 39 F.3d 158, 163 (7th Cir.1994) (citations omitted). It is the "well-established duty of the trial court to ensure that the claims of a pro se litigant are given a 'fair and meaningful consideration.' " Palmer v. City of Decatur, 814 F.2d 426, 428–29 (7th Cir.1987) (quotation and citations omitted); see also Duncan v. Duckworth, 644 F.2d 653, 655 (7th Cir.1981) (pro se pleadings are held to less stringent standards than those prepared by counsel). Even so, the Court cannot properly disregard the requirements of Rule 402.N. Consequently, because the Debtor failed to properly comply with Rule 402.N by making specific references to the portions of the record on which he relies to defeat the motion at bar, the Credit Union's statement of facts are deemed admitted.

### III. FACTS AND BACKGROUND

The following findings are drawn from references in the record furnished by the parties in their papers filed relating to the instant motion and to their Rule 402.M and 402.N statements. The Debtor was a member of the Credit Union since 1979 and had both savings and checking accounts with that organization. He also became a debtor of the Credit Union when he borrowed from it. One of his loans is

the genesis of this litigation and a criminal prosecution of the Debtor in the United States District Court for the Central District of Illinois.

On August 23, 1995, the Credit Union approved the Debtor's loan request for $12,000.00 for the purpose of purchasing a 1992 Lincoln Towncar. *See* Credit Union's Exhibit No. 4 (Affidavit of Richard Hurt at ¶ 6). This is the subject debt whose repayment has resulted in the instant litigation. The Debtor received the loan proceeds on August 23, 1995. *Id.* at ¶ 10. The Debtor never purchased the 1992 Lincoln Towncar. *Id.* However, the Debtor did obtain an insurance certificate from State Farm Insurance stating that he had obtained insurance on a 1992 Lincoln Towncar, which the Debtor presented to the Credit Union prior to the filing of his bankruptcy case. *Id.* at ¶ 6(d). The loan was in default when the Debtor failed to purchase the 1992 Lincoln Towncar. *Id.* at ¶ 10. The loan documents signed by the Debtor on August 23, 1995, included a provision for the payment of the Credit Union's attorneys' fees. *Id.* at ¶ 7.

The Debtor filed a voluntary Chapter 7 petition on May 2, 1996, and scheduled the Credit Union among his unsecured creditors. It received notice on May 15, 1996. *See* Credit Union's Exhibit No. 23 (Joint Pretrial Statement, p. 25, ¶ 23). Upon receiving notification of the bankruptcy filing, the Credit Union did not place an administrative freeze on the Debtor's account. *See* Credit Union's Exhibit No. 4 (Affidavit of Richard Hurt at ¶s 8 and 9).

The Debtor had previously entered into a voluntary repayment plan with the Credit Union to repay the loan. Prior to the filing of the bankruptcy case, the Debtor was paying on the loan to the Credit Union, via automatic payroll deduction. *See* Credit Union's Exhibit No. 23 (Joint Pretrial Statement, p. 25, ¶ 27). On June 11, 1996, the Debtor faxed a letter to Daniel Maher ("Maher"), attorney for the Credit Union, authorizing the continuance of payroll deductions post-petition for payment of the loan. *See* Credit Union's Exhibit No. 2 (Deposition of Debtor, p. 42, lines 12–24; p. 43, lines 1–7); Credit Union's Exhibit No. 23 (Joint Pretrial Statement, p. 25, ¶ 29). The Credit Union filed a complaint under 11 U.S.C. § 523 to determine the dischargeability of the subject automobile loan debt on August 9, 1996. Credit Union's Exhibit No. 23 (Joint Pretrial Statement, p. 26, ¶ 37). The Debtor received a discharge on August 28, 1996. *Id.* at ¶ 38.

The Debtor never revoked his post-petition authorization for continued payroll deductions until he sent the letters to the Credit Union on February 13, 1997 and February 17, 1997. *Id.* at ¶ 31; Credit Union's Exhibit No. 4 (Affidavit of Richard Hurt at ¶ 12). Prior to the revocation, the Debtor never attempted to discontinue the post-petition automatic loan payments. *Id.* The Credit Union continued payroll deductions post-petition after receiving the Debtor's June 11, 1996 authorization until receipt of the Debtor's revocation. *Id.* All post-petition payroll deductions were made from the Debtor's post-petition earnings. *Id.* at ¶ 13.

Prior to the bankruptcy filing and continuing through January 1997, the Debtor's paychecks from his employer, the Illinois State Police ("ISP"), were direct deposited in one of the Debtor's accounts at the Credit Union. *See* Credit Union's Exhibit No. 2 (Deposition of Debtor, p. 18, lines 3–15). The Debtor was employed by the ISP from 1978 until he resigned on June 13, 1997. *See* Credit Union's Exhibit No. 23 (Joint Pretrial Statement, p. 26, ¶ 33). On June 13, 1997, the Debtor was convicted of bank fraud in the United States District Court for the Central District of Illinois. *See* Credit Union's Exhibit No. 22 (October 21, 1997 Order of Judge Richard Mills).

In the ordinary course of regularly conducted business activities, certain documents are prepared by the Credit Union in its regular practice at the time of the

transaction and such records are kept in the loan files for Credit Union borrowers. *See* Credit Union's Exhibit No. 4 (Affidavit of Richard Hurt at ¶ 4). The loan file for a secured loan will always contain copies of the following documents: loan application; loan documents; evidence of insurance; and evidence of lien perfection. *Id.*

The Credit Union is a federally chartered credit union and as such must abide by all federal statutes and regulations concerning lending institutions. *Id.* at ¶ 3. The Credit Union was required pursuant to 31 U.S.C. § 5318 to file a Suspicious Activity Report ("SAR") with the United States Treasury Department for any suspicious transaction relevant to a possible violation of law or regulation. *Id.* On June 20, 1996, the Credit Union filed an SAR regarding the loan transaction with the Debtor. *Id.* at ¶ 7.

On September 13, 1996, the Debtor and Maher appeared before this Court at a status hearing on the Credit Union's complaint. *See* Credit Union's Exhibit No. 23 (Joint Pretrial Statement, p. 26, ¶ 39). At the hearing, the Debtor asked the Court if he had to continue to pay the Credit Union the monthly payments by payroll deduction or by any method. The Court indicated that the Debtor could make the payments as long as he wanted to. The Debtor asked the Court about the post-petition monthly payments because he wanted Maher to hear that he did not have to make the post-petition monthly payments and was doing it on the basis that he wanted to honor his debts. *See* Credit Union's Exhibit No. 2 (Deposition of Debtor, p. 82, lines 13–24 and p. 83, lines 1–23). At the September 13, 1996 status hearing, the Debtor retained Karren Brower, a bankruptcy attorney ("Brower"), to represent him in the adversary proceeding. *Id.* at p. 99, lines 4–21; Credit Union's Exhibit No. 3 (Deposition of Karren Brower, p. 7, lines 13–19).

On June 18, 1997, Brower sent a letter to Maher threatening sanctions if the Credit Union continued prosecution of the adversary proceeding after the Debtor's criminal conviction. *Id.* at p. 42, lines 14–18 and Credit Union's Exhibit No. 12 (June 18, 1997 letter from Brower to Maher). On June 23, 1997, Maher sent a letter to Brower, Michael Metnick, criminal attorney for the Debtor, and Beth Collins, Assistant United States Attorney, confirming his understanding of the settlement agreement of the parties reached in the adversary proceeding. *See* Credit Union's Exhibit No. 13.

On July 30, 1997, the United States Attorney filed a motion to preserve assets with the District Court for the Central District of Illinois, seeking to preserve retirement funds due to the Debtor for the payment of fines and restitution. *See* Credit Union's Exhibit No. 23 (Joint Pretrial Statement, pp. 26–27, ¶ 41). The motion was uncontested and was granted by Judge Richard Mills on that same date. *Id.*

On August 15, 1997, the Debtor filed a motion to distribute assets with the District Court for the Central District of Illinois, in part seeking payment as restitution of the Credit Union's loan and attorneys' fees. *See* Credit Union's Exhibit No. 7. On August 16, 1997, the United States Attorney filed a motion to amend the July 30, 1997 Order to compel the Credit Union to place the escrowed funds with the Clerk of the Court. *See* Credit Union's Exhibit No. 23 (Joint Pretrial Statement, p. 24, ¶ 13). On August 16, 1997, the District Court amended its July 30, 1997 Order and ordered the Credit Union to place the Debtor's funds with the Clerk of the Court. *Id.* at ¶ 14. The Credit Union never escrowed any of the Debtor's funds with the Clerk of the Court. *Id.* at ¶ 15. On August 22, 1997, the Credit Union received the Debtor's retirement funds. *Id.* at ¶ 16.

Pursuant to its agreement with the Debtor, the Credit Union filed with this Court a motion to dismiss its adversary

proceeding. *See* Credit Union's Exhibit No. 8. The motion sought dismissal without prejudice and with leave to reinstate if full restitution was not made to the Credit Union in the criminal proceeding. *Id.* The motion was granted by this Court on October 3, 1997. *See* Credit Union's Exhibit No. 9.

On October 21, 1997, the Debtor was sentenced in the District Court. *See* Credit Union's Exhibit No. 10. The sentencing order required the Debtor to serve four months imprisonment, pay $50.00 in assessments, pay a $2,000.00 fine to the Clerk of the Court, and pay $9,009.03 to the Credit Union in restitution regarding the subject debt. *Id.* On November 6, 1997, the District Court ordered the Credit Union to distribute the funds it was holding in escrow for the Debtor in the following manner: pay $2,050.00 to the Clerk of the Court; pay $9,009.03 to the Credit Union; and pay the remainder of the escrow account to the Debtor. *See* Credit Union's Exhibit No. 23 (Joint Pretrial Statement, pp. 24–25, ¶ 20). The Credit Union retained the remainder of the escrow account for itself. *Id.* at ¶ 21.

On November 18, 1998, Judge Richard Mills entered an order denying the Debtor's rule to show cause, which stated in part:

> It should be noted that Defendant himself seemed to understand that he was obligated to pay attorneys fees as part of the restitution in the case. In his motion filed on August 15, 1997, Defendant acknowledges that he wished to pay attorneys fees in the amount of $4,500 to the Credit Union. Furthermore, in its response to Defendant's Motion, the Credit Union attached a letter indicating that Defendant had agreed to pay both the loan amount and the attorneys fees.
>
> While it is true that the Court has power under the All Writs Act, 18 U.S.C. § 1651, to enter orders of restitution as a method of protecting its judgments, the Court does not have the power to extinguish all claims of any sorts that may be asserted to the funds involved in this case. The Court did not intend by its orders of October 21, 1997, and November 5, 1997, to extinguish any other claims that may be asserted to the remainder of the funds. Rather, this Court merely intended to release any claim to the remainder of funds that this Court had in this case.

*See* Credit Union's Exhibit No. 11.

## IV. CONTENTIONS OF THE PARTIES

The Debtor filed his complaint in this matter against the Credit Union in February, 1999. He contends that the Credit Union willfully violated the automatic stay under 11 U.S.C. § 362(h) and the discharge injunction under 11 U.S.C. § 524, and seeks compensation for actual damages, plus punitive damages, attorney's fees and costs arising from the Credit Union's alleged violations. Specifically, the Debtor alleges in Counts I and II of the complaint that he did not voluntarily agree to post-petition repayment of the loan to the Credit Union. In Count II of the complaint, the Debtor alleges that the Credit Union violated the discharge injunction under § 524 by retaining $3,116.80 of the Debtor's employment benefits distributed pursuant to the District Court's Order entered on October 21, 1997.

The Debtor argues in his response and memorandum to the motion for summary judgment that he never voluntarily agreed to repay the subject debt owed to the Credit Union, but was coerced by Maher's alleged threats of criminal prosecution and employment discipline, despite his written statements and directions to the contrary, and his deposition testimony and his trial testimony in the criminal prosecution. The Debtor further argues that the temporary administrative freeze on his accounts with the Credit Union was extortion; that it induced his indictment and caused his wrongful conviction based on false evidence and perjurious testimony; that the

Credit Union, not the Debtor, "fraudulently composed" the loan application on which the loan to him was made; and that the Credit Union failed to reveal a different oral agreement that did not obligate the Debtor to purchase the Lincoln Towncar until he had sold other vehicles and received their equity.

Many of these arguments regarding the criminal proceeding are inappropriately raised in this Court, which wholly lacks any criminal jurisdiction. The Debtor's remedy, if any, lies with the United States District Court for the Central District of Illinois where he was convicted and sentenced and the federal appellate courts, not this Court.

The Credit Union has denied the substantive allegations of the complaint contending the Debtor, at all times, voluntarily agreed to repay the subject loan and its retention of the subject benefits. The Credit Union has raised twelve affirmative defenses in its amended answer to the Debtor's complaint. The Credit Union seeks summary judgment on nine of those twelve affirmative defenses: (1) the placement of an administrative freeze on a debtor's account after receipt of notice of a bankruptcy filing is not a violation of the automatic stay under § 362(a); (2) it is not a violation of § 362(a) or § 524 for a creditor and a debtor to enter into a voluntary repayment plan; (3) authorized payroll deductions from a debtor's post-petition earnings do not constitute a violation of § 362(a); (4) it is not a violation of the provisions of § 362(a) for a federal credit union to comply with the federally mandated reporting procedures of 31 U.S.C. § 5318; (5) any entity filing an SAR pursuant to 31 U.S.C. § 5318(g) is granted full and complete immunity from all claims, actions and liabilities arising out of the filing of that report; (6) it is not a violation of the automatic stay for a creditor to cooperate with a criminal investigation or prosecution; (7) actions taken by a creditor prior to entry of a debtor's discharge order cannot violate the injunction provi-

sions of § 524; (8) the Debtor should be barred from any recovery by virtue of the doctrine of laches because he waited over two years to file a complaint concerning the Credit Union's alleged violations; and (9) the Debtor should be barred from recovery of the $3,116.80 in benefits by virtue of the doctrine of equitable estoppel. The Court will address each defense in turn.

## V. DISCUSSION

### A. Whether it is a violation of 11 U.S.C. § 362 to place an administrative freeze on a debtor's bank account

The Credit Union contends that it is entitled to judgment as a matter of law that the placement of an administrative hold on a debtor's bank account after receipt of notice of a bankruptcy filing is not a violation of the automatic stay provisions of § 362(a). In addition, the Credit Union argues that the undisputed facts show that it did not place an administrative freeze on the Debtor's accounts. The Debtor, on the other hand, argues that the Credit Union is not entitled to summary judgment on this issue because the Credit Union placed the administrative freeze on the accounts for reasons other than an administrative hold to maintain the status quo.

■ The Court finds that there is no genuine issue of material fact regarding whether the Credit Union placed an administrative freeze on the Debtor's checking and savings accounts. The undisputed evidence demonstrates that the Credit Union did not place an administrative freeze on the Debtor's accounts. *See* Credit Union's Exhibit No. 4 (Affidavit of Richard Hurt at ¶s 8 and 9). Furthermore, the undisputed evidence shows that the Debtor had full use of his accounts during the months of May and June 1996. *Id.* at Exhibits F and G thereto. There is no period of inactivity reflected on the Debtor's May and June 1996 statements. *Id.* The evidence also demonstrates that the Debtor's paychecks were direct deposited

into his accounts each month before and after the bankruptcy filing. It is also undisputed that the Debtor's loan payments were made by payroll deduction before and after the bankruptcy filing and that the Debtor's loan payments were current through January 1997. *See* Credit Union's Exhibit No. 2 (Deposition of Debtor, p. 18, lines 3–23). The evidence demonstrates that the Debtor had complete control of his accounts with the Credit Union at all times following the filing of the bankruptcy petition. The Debtor's self-serving assertions to the contrary, without factual support in the record, are insufficient to defeat a motion for summary judgment. *See Jones v. Merchants Nat'l Bank & Trust Co. of Indianapolis,* 42 F.3d 1054, 1058 (7th Cir.1994) (citation omitted). The Debtor's reliance on an unspecified reference to the deposition of William Townsend for support of his position that an administrative freeze occurred is insufficient under Rule 56 and Local Rule 402.N. Moreover, his self-serving affidavit which contradicts his earlier deposition testimony cannot serve to create an issue of material fact thereby defeating proper entry of summary judgment. *See Piscione v. Ernst & Young, L.L.P.,* 171 F.3d 527, 532 (7th Cir.1999) (citations omitted).

█ Additionally, as a matter of law, the Credit Union is entitled to summary judgment on this issue. Even if the Court were to find that the Credit Union did place an administrative freeze on the Debtor's accounts, the United States Supreme Court has generally held that it is not a violation of the provisions of § 362(a) for a bank to place an administrative freeze on a borrower's account upon receipt of notice of a bankruptcy filing. *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 21, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995). The case cited by the Debtor, *In re Flynn,* 143 B.R. 798 (Bankr.D.R.I.1992), in support of his contention that the placement of an administrative freeze on a debtor's account constitutes a violation of the automatic stay is not controlling or binding on this Court, and was decided prior to *Strumpf.* Consequently, the Court grants summary judgment in favor of the Credit Union on this issue.

**B.** ***Whether it is a violation of § 362(a) or § 524 for a creditor and a debtor to enter into a voluntary repayment plan***

█ Next, the Credit Union argues that it is entitled to summary judgment on the issue of whether it is a violation of § 362(a) or § 524 for a creditor and a debtor to enter into a voluntary repayment plan. The Credit Union contends that there is no issue of fact regarding whether it and the Debtor entered into a post-petition voluntary repayment plan. Further, it maintains that as a matter of law it is entitled to judgment because it is not a violation of either § 362(a) or § 524 for a creditor and a debtor to enter into a voluntary repayment plan. The Debtor contends that his written authorization for the Credit Union to continue payroll deductions was not voluntary, but rather, was coerced by Maher, who, in a telephone call to the Debtor on June 11, 1996, threatened him with criminal prosecution and employment discipline which caused the Debtor to acquiesce and fax the written authorization. The Court agrees with the Credit Union and grants summary judgment on this issue.

It is undisputed that the Debtor executed a post-petition authorization for continued payroll deductions. The Debtor did not rescind that authorization until February 17, 1997. *See* Credit Union's Exhibit No. 23 (Joint Pretrial Statement, p. 26, ¶ 31). Further, the evidence demonstrates that the Debtor repeatedly stated that it was his intent to repay the Credit Union loan. *See* Credit Union's Exhibit No. 2 (Deposition of Debtor, p. 43. lines 8–13 and p. 82, lines 13–24); Complaint, Count II, ¶ 11; Credit Union's Exhibit No. 1 (Transcript of Proceedings on June 12, 1997 before the District Court for the Central District of Illinois, Volume II, p. 202, lines 10–15); Affidavit of Debtor, p. 3, ¶ 2.

Pursuant to 11 U.S.C. § 524(f), which states that "[n]othing … prevents a debtor from voluntarily repaying any debt," a debtor may enter into a voluntary repayment plan with a creditor. *See also In re Hellums*, 772 F.2d 379, 381 (7th Cir.1985) ("Debtors who file under [Chapter 7] can dispose of their post-petition earnings as they choose, including voluntary repayment of debts otherwise dischargeable in bankruptcy."). A voluntary repayment plan does not constitute a violation of § 524 or § 362(a). *Id.; In re Briggs*, 143 B.R. 438, 450 (Bankr. E.D.Mich.1992). The Debtor's self-serving assertion that the agreement with the Credit Union was not voluntary is without factual support in the record. The lack of corroborating evidence to support the contrary assertions in his affidavit fails to create a genuine issue of material fact. *See Piscione*, 171 F.3d at 532; *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir.1993); *Russell v. Acme–Evans Co.*, 51 F.3d 64, 67–68 (7th Cir.1995). The Debtor has failed to controvert the undisputed fact that on several occasions, including his prior sworn testimony, he stated that he was voluntarily repaying the Credit Union. Hence, the Court finds that no genuine issue of material fact exists and that the Credit Union is entitled to judgment as a matter of law.

### C. Whether authorized payroll deductions from a debtor's post-petition earnings constitute a violation of § 362(a)

The Credit Union maintains that it is entitled to summary judgment on the issue of whether authorized payroll deductions from the Debtor's post-petition earnings constitute a violation of § 362(a). The Debtor contends that he did not voluntarily enter into a repayment plan with the Credit Union and did not voluntarily authorize payroll deductions.

It is undisputed that on August 23, 1995, the Debtor authorized the Credit Union to use payroll deductions for repayment of the loan. It is also undisputed that on June 11, 1996, the Debtor sent to Maher written authorization to allow the Credit Union to continue payroll deductions from the Debtor's post-petition earnings. The Credit Union continued payroll deductions post-petition after receiving the Debtor's June 11, 1996 authorization. The evidence also demonstrates that the Debtor did not revoke his post-petition authorization for continued payroll deductions until he sent letters to the Credit Union on February 13, 1997 and February 17, 1997. Prior thereto, the Debtor did not attempt to discontinue the post-petition automatic payments. Additionally, the Debtor informed the Court of his post-petition payments to the Credit Union and never advised the Court or alleged, prior to the filing of his complaint in this matter, that he had been threatened, intimidated or forced to make these post-petition payments to the Credit Union. The Court finds that the Debtor has failed to establish that the payments made to the Credit Union from June, 1996 until February, 1997 were not voluntary payments made pursuant to his agreement with the Credit Union and his prior testimony and statements in the record. This undisputed evidence demonstrates that those payments were voluntary.

The Court finds that as a matter of law, the Credit Union is entitled to summary judgment on this issue. In *Hellums*, the Seventh Circuit addressed a similar situation. In that case, the credit union had a pre-petition authorization for payroll deductions on the debtor, and based on this pre-petition authorization, it continued payroll deductions on the debtor's post-petition earnings. The court held that the credit union had violated the automatic stay and cited *In re Holland*, 21 B.R. 681 (Bankr.N.D.Ind.1982), which stated that:

the transfer by a creditor of post-petition money received pursuant to a pre-petition automatic withdrawal-loan repayment arrangement to pay a pre-petition debt owed to that creditor is a violation of the automatic stay unless the debtor has presented the creditor with

some formal evidence of his or her willingness to voluntarily have post-petition earnings applied to a dischargeable prepetition debt. . . .

772 F.2d at 380 (citations omitted).

In the case at bar, the Credit Union received a post-petition written authorization from the Debtor dated June 11, 1996, to continue his payroll deductions. Until February 13, 1997, a point in time over five months after the automatic stay of § 362(a) was supplanted by the discharge entered under §§ 727 and 524(a), the Credit Union never received any communications from the Debtor concerning the payroll deductions, and it was never made aware of the Debtor's allegations of coercion until October, 1998. *See* Credit Union's Exhibit No. 4 (Affidavit of Richard Hurt at ¶ 12). The payroll deductions were made from the Debtor's post-petition earnings which were not property of the Chapter 7 bankruptcy estate. 11 U.S.C. § 541(a)(6); *Hellums,* 772 F.2d at 381.

The Debtor's reliance on *In re Schwartz,* 954 F.2d 569 (9th Cir.1992) is misplaced. In *Schwartz,* the court was faced with the issue of whether or not a creditor's actions taken in violation of the automatic stay were void or voidable. The Debtor here seeks damages under § 362(h) for violations of the stay, not a determination that the Credit Union's acts were void or voidable. In sum, the Court finds that no genuine issue of material fact exists and that the Credit Union is entitled to summary judgment as a matter of law on this issue.

**D.** *Whether it is a violation of the provisions of § 362(a) for a federal credit union to comply with the federally mandated reporting procedures of 31 U.S.C. § 5318 and whether an entity filing a suspicious activity report pursuant to 31 U.S.C. § 5318(g) is granted immunity from all claims, actions and liabilities arising out of the filing of that report*

Next, the Credit Union seeks summary judgment on the issues of whether it is a violation of § 362(a) for a federal credit union to comply with the federally mandated reporting procedures of 31 U.S.C. § 5318, and whether an entity filing an SAR pursuant to § 5318(g) is granted full and complete immunity from all claims, actions and liabilities arising out of the filing of that report. The Debtor contends that these reporting provisions are discretionary and that the Credit Union utilized the threat of these provisions as coercion to make the Debtor comply with the Credit Union's demands to continue loan payments to the Credit Union. The Debtor seeks damages for the alleged violations of § 362(a) resulting from the filing of the SAR and the subsequent criminal prosecution. In his memorandum of law in response to the motion for summary judgment, the Debtor states that he does not seek damages for the filing of the SAR by the Credit Union. Now, the Debtor claims that the Credit Union "by and through its nexus with the ISP, undertook other acts to cause [the Debtor] to be investigated, prosecuted and convicted. Other acts included [the Credit Union's] Board President and ISP Captain, Doug Brown, requesting [the Debtor] be investigated by the ISP's Division of Internal Investigation." *See* Debtor's Memorandum of Law in Response to the Motion for Summary Judgment at p. 11.

The evidence undisputedly demonstrates that on June 11, 1996, the Debtor informed Maher that he had not used the $12,000.00 borrowed from the Credit Union on August 23, 1995 to buy a 1992 Lincoln Towncar. *See* Credit Union's Exhibit No. 2 (Deposition of Debtor, p. 39, lines 1–12). The purpose of the August 23, 1995 loan was to finance the purchase of a 1992 Lincoln Towncar. After learning of the Debtor's failure to purchase the vehicle, the Credit Union prepared and submitted an SAR in compliance with 31 U.S.C. § 5318. *See* Credit Union's Exhibit No. 4 (Affidavit of Richard Hurt at ¶ 7 and Ex-

hibit A attached thereto). The Credit Union believed that the Debtor violated federal law because he borrowed money from the Credit Union to purchase a 1992 Lincoln Towncar, which he did not purchase, yet obtained insurance coverage on a vehicle he did not own.

The Credit Union, as a federally chartered credit union, must comply with the provisions of 31 U.S.C. § 5318(g). Section 5318(g)(1) provides that "[t]he Secretary may require any financial institution, and any director, officer, employee, or agent of any financial institution, to report any suspicious transaction relevant to a possible violation of law or regulation." 31 U.S.C. § 5318(g)(1). In addition, § 5318(g)(3) provides:

> Any financial institution that makes a disclosure of any possible violation of law or regulation or a disclosure pursuant to this subsection or any other authority, and any director, officer, employee, or agent of such institution, shall not be liable to any person under any law or regulation of the United States or any constitution, law, or regulation of any State or political subdivision thereof, for such disclosure or for any failure to notify the person involved in the transaction or any other person of such disclosure.

31 U.S.C. § 5318(g)(3).

■ The Court finds that pursuant to these provisions, the Credit Union was mandated by federal law to file an SAR in a situation where a borrower admits that loan proceeds were not used for the stated purpose and there is no collateral for a secured loan.

■ Section 362(b)(1) provides for an exception to the automatic stay for "the commencement or continuation of a criminal action or proceeding against the debtor." 11 U.S.C. § 362(b)(1). "The exception covers, from start to finish, all of the parts or proceedings that constitute a criminal action. For example, (b)(1) shields the filing of a criminal complaint or other process that initiates the criminal

action even if the person responsible is a private citizen who is the debtor's creditor." 1 D. Epstein, S. Nickles and J. White, *Bankruptcy* § 3–20 at p. 206 (1992 ed.) (footnote omitted).

■ The Court finds that it is not a violation of § 362(a) for the Credit Union to comply with the federally mandated reporting procedures of 31 U.S.C. § 5318. It is possible, if not probable, that the SAR began the criminal prosecution of the Debtor, which led to his conviction, sentencing and restitution of the subject debt ordered by the District Court. There is persuasive authority that the exception of § 362(b)(1) is not solely limited to the formal criminal litigation per se. *See Schake v. County of Buffalo, Nebraska (In re Schake)*, 154 B.R. 270, 274 (Bankr.D.Neb. 1993) (§ 362(b)(1) applied to county attorney who acted upon a criminal complaint against the debtor for writing a bad check). The *Schake* court noted that "[t]he right to commence a criminal action is meaningless unless it extends to performance of the conditions precedent thereto." *Id.* The Court agrees with this proposition.

■ In *Lee v. Bankers Trust Co.*, 166 F.3d 540 (2d Cir.1999), the court addressed the issue of a financial institution's immunity from a defamation claim arising from the filing of an SAR. The *Lee* court noted that "[t]he regulations promulgated under the AnnunzioWylie Act … 31 U.S.C. § 5318(g), require financial institutions … to file an SAR 'no later than thirty (30) days after the initial detection of a known or suspected violation of federal law, a suspected transaction related to money laundering activity, or a violation of the Bank Secrecy Act.' " *Id.* at 543 (citation omitted). The court further noted that "[t]he safe harbor provision applies, regardless of whether the SAR is filed as required by the Act or in an excess of caution." *Id.* at 544 (citation omitted). Hence, § 5318(g)(3) provides immunity for "disclosure of any possible violation of law or regulation." 31 U.S.C. § 5318(g)(3). A financial institution's disclosure is protect-

ed even if it ultimately turns out there was no violation of the law. *Lopez v. First Union Nat'l Bank of Florida,* 129 F.3d 1186, 1192 (11th Cir.1997). Therefore, pursuant to § 5318(g)(3) and the case law interpreting that section, the Credit Union has immunity from all liability for any disclosures contained in the SAR.

In addition, the Court finds that the filing of the SAR did not violate the automatic stay provisions of § 362(a) because it was excepted under § 362(b)(1). Thus, the Court finds that no issue of material fact exists and that the Credit Union is entitled to judgment as a matter of law with respect to these issues. To the extent the Debtor's arguments seek to collaterally attack the results of the criminal prosecution and seek relief here from the result there, they are rejected.

The Debtor cites *In re Van Riper,* 25 B.R. 972 (Bankr.W.D.Wis.1982) in support of his argument that the Credit Union violated the automatic stay when Maher allegedly threatened him with criminal prosecution. In *Van Riper,* Judge Martin held that § 362(b)(1) did not apply to a creditor's efforts to have the debtor prosecuted under a Wisconsin contractor theft statute where no criminal proceeding was pending when the debtor filed bankruptcy. *Id.* at 974. The Court does not agree with this position. Rather, it follows the line of cases which requires the showing of bad faith on the creditor's part in using the action to collect a pre-petition debt. *See, e.g., Alten v. Anders (In re Alten),* 108 B.R. 16 (Bankr.D.R.I.1989); *Creative Media Productions, Inc. v. Anders (In re Creative Media Productions, Inc.),* 108 B.R. 404 (Bankr.D.R.I.1989) (both cases hold that bad check prosecution is not stayed absent a showing of bad faith on the creditor's part in using the action to collect a pre-petition debt).

**E.** *Whether it is a violation of the automatic stay for a creditor to cooperate with a criminal investigation or prosecution*

Next, the Credit Union seeks summary judgment on the issue of whether it is a violation of § 362(a) for a creditor to cooperate with a criminal investigation or prosecution. The Debtor argues that the Credit Union instituted criminal proceedings against him, while knowing he was innocent, as a means to recoup its loan balance and attorneys' fees.

██ Section 362(b)(1) provides certain statutory exception to the automatic stay and states in relevant part:

(b) The filing of a petition under section 301 ... of this title ... does not operate as a stay-

(1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor.

11 U.S.C. § 362(b)(1). The exception to the stay under this section arises if the proceeding against the debtor is criminal in nature. *In re Wrobel,* 197 B.R. 289, 293 (Bankr.N.D.Ill.1996) (citations omitted). Several courts have held that a creditor's petition for contempt does not violate the automatic stay. *See Roussin v. Johnson,* 97 B.R. 130 (D.N.H.1989); *Altchek v. Altchek (In re Altchek),* 124 B.R. 944 (Bankr. S.D.N.Y.1991). Additionally, § 362(b)(4) expressly allows a governmental unit to commence or continue an action or proceeding to enforce such governmental unit's police or regulatory power. 11 U.S.C. § 362(b)(4).

The Court finds that the actions of the Credit Union in filing the SAR were excepted under § 362(b)(1). Pursuant to 31 U.S.C. § 5318(g), the United States Department of Treasury requires that federally chartered credit unions file an SAR in all cases involving the violation or suspected violation of a law. There is no evidence in the record that the Credit Union's cooperation in the federal criminal prosecution of the Debtor was intended to somehow circumvent the bankruptcy process. It did not do so in any way because the Debtor

received his Chapter 7 discharge in due course. The Debtor is now discharged from personal liability on all dischargeable debts. This is the central point and aim of most Chapter 7 debtors.

■ The Court finds that the filing of the SAR by the Credit Union and the testimony of the Credit Union's employee, Jeffrey Smith, and its attorney, Maher, in the Debtor's criminal trial in the District Court for the Central District of Illinois, falls within the exception to the automatic stay under § 362(b)(1). The Credit Union filed a mandatory report that precipitated the criminal investigation, indictment, trial and subsequent conviction. This action on the part of the Credit Union clearly was mandated by the United States Department of Treasury pursuant to 31 U.S.C. § 5318(g), and the Court finds that it falls within the exception of the automatic stay under § 362(b)(1) because it led to the commencement of a governmental unit's police or regulatory power, namely the federal criminal prosecution,which itself was also excepted under § 362(b)(4). This report was not a civil collection action against the Debtor.

Moreover, the testimony of the Credit Union's employee and its attorney given in conjunction with the federal criminal prosecution also falls within these exceptions to the automatic stay. The fact that the Credit Union, through its employee and attorney, cooperated in the criminal investigation against the Debtor does not constitute a violation of the automatic stay. There was no attempt on the part of the Credit Union to unlawfully enforce a pre-petition debt. The restitution ordered from the Debtor, not the bankruptcy estate, in favor of the Credit Union cannot be viewed as separate from the Debtor's conviction and sentencing, but as an integral part of the criminal prosecution. Accordingly, the Court finds that as a matter of law, the Credit Union is entitled to summary judgment on this issue.

### F. Whether actions taken by a creditor prior to entry of a debtor's discharge order violate the injunction provisions of § 524

Next, the Credit Union seeks summary judgment on the issue of whether actions taken by it prior to the entry of the Debtor's discharge are violative of the injunction provisions of § 524. In Count II of the complaint, the Debtor asserts that the Credit Union instigated the following actions in an attempt to collect a discharged debt through criminal proceedings: (1) caused the Debtor's senior command officer to relieve him from duty on August 15, 1996; (2) caused the Debtor's employer to serve the Debtor with documents on August 23, 1996, declaring the Debtor the subject of an internal investigation; and (3) caused the Debtor's senior command officer to remove the Debtor from his position as Deputy Director of Narcotics Task Force on August 9, 1996.

■ The Court finds that summary judgment is appropriate in favor of the Credit Union on this issue. In his response to the motion for summary judgment, the Debtor does not dispute that actions taken by a creditor prior to the entry of a debtor's discharge do not violate § 524. The Debtor received a discharge on August 28, 1996. All of the above enumerated actions taken by the Credit Union in August, 1996, were prior to the entry of the discharge. Actions taken by a creditor prior to the entry of a discharge order cannot violate the injunction provisions of § 524 because that section does not take effect until the entry of the discharge order, which supplants the automatic stay of § 362(a).

### G. Whether the Debtor should be barred from recovery of damages from the Credit Union's alleged violations of §§ 362(a) and 524 under the doctrine of laches

The Credit Union seeks summary judgment on the issue that the Debtor should be barred from seeking damages for its

alleged violations of § 362(a) and § 524 pursuant to the doctrine of laches because the Debtor waited for over two years to file the instant complaint. The Debtor denies that he waited over two years to file this complaint, and he contends he only learned of his right to do so in 1997.

■■■■ The doctrine of laches arises due to a change in the conditions of the parties. *Lingenfelter v. Keystone Consol. Indus., Inc.,* 691 F.2d 339, 340 (7th Cir. 1982). If a plaintiff unjustifiably delays in pursuing a cause of action and the defendant is prejudiced by the delay, the laches doctrine bars the plaintiff from proceeding. *See Anderson v. Board of Regents of University of Wisconsin System,* 140 F.3d 704, 706–07 (7th Cir.1998); *Hawxhurst v. Pettibone Corp.,* 40 F.3d 175; 181 (7th Cir.1994); *Herman v. City of Chicago,* 870 F.2d 400, 401 (7th Cir.1989); *Smith v. City of Chicago,* 769 F.2d 408, 410 (7th Cir.1985); *Moriarty v. Glueckert Funeral Home, Ltd.,* 925 F.Supp. 1389, 1397 (N.D.Ill.1996). Laches is an affirmative defense which is required to be proved by the party raising it. *Hawxhurst,* 40 F.3d at 181. Whether to employ the doctrine rests within the sound discretion of the Court. *Baker Mfg. Co. v. Whitewater Mfg. Co.,* 430 F.2d 1008, 1011–15 (7th Cir.1970), *cert. denied,* 401 U.S. 956, 91 S.Ct. 978, 28 L.Ed.2d 240 (1971).

■■■■ The plaintiff bears the burden of explaining the reason for the delay in pursuing the action. *Zelazny v. Lyng,* 853 F.2d 540, 541 (7th Cir.1988). Moreover, if "the delay is inexcusable, then the defendant must show prejudice." *Lingenfelter,* 691 F.2d at 340. The *Zelazny* court further explained:

> [T]he plaintiff's inexcusable delay is relevant to whether actual prejudice has been shown. "If only a short period of time has elapsed since the accrual of the claim, the magnitude of prejudice require[d] before the suit should be barred is great, whereas if the delay is lengthy, prejudice is more likely to have occurred

and less proof of prejudice will be required."

*Zelazny,* 853 F.2d at 543 (quoting *Goodman v. McDonnell Douglas Corp.,* 606 F.2d 800, 807 (8th Cir.1979), *cert. denied,* 446 U.S. 913, 100 S.Ct. 1844, 64 L.Ed.2d 267 (1980)). The mere passage of time cannot constitute laches. *Smith,* 769 F.2d at 410.

■■■■ The Court concludes that the doctrine of laches does not bar the Debtor's complaint. The alleged violations of the automatic stay and discharge injunction occurred between June 11, 1996 and August 28, 1996. The Debtor filed his complaint in February 1999. The Court concludes that the Credit Union is not entitled to relief under the doctrine of laches because the Debtor waited over two years to file a complaint against the Credit Union for alleged violations of the automatic stay and discharge injunction. The Bankruptcy Code sets no time limit on the filing of this type of action by a debtor against a creditor. While two years after the alleged violations certainly constitutes delay, a genuine issue exists regarding whether that delay was unjustifiable. The Debtor contends that he was unaware of his claim of recourse in this Court against the Credit Union until 1997. As a result, this issue is not properly disposed of on a motion for summary judgment.

The Court finds that the Credit Union relied on representations made by the Debtor in the criminal proceeding as well as representations by his attorney that it would be repaid its entire balance of the loan. *See* Credit Union's Exhibit No. 4 (Affidavit of Richard Hurt at ¶ 14). In reliance on the Debtor's representations and those of his attorney, the Credit Union dismissed, without prejudice, its complaint to determine the dischargeability of the debt in October, 1997. *Id.* Thus, such dismissal of its complaint to determine the dischargeability of the debt owed it by the Debtor was subject to reinstatement if the Debtor did not pay the restitution ordered by the District Court which has been paid

by the Debtor. Therefore, the Credit Union has not been prejudiced. Because the Credit Union has not demonstrated sufficient prejudice as a result of the delay of the Debtor, the Court declines to grant summary judgment on this issue.

### H. *Whether the Debtor should be barred from recovery of the $3,116.80 in benefits by virtue of the doctrine of equitable estoppel*

Finally, the Credit Union seeks summary judgment on the basis that the Debtor should be barred from recovery of the $3,116.80 in benefits under the doctrine of equitable estoppel because the Credit Union was led to believe by the Debtor and/or his agents that the Credit Union would receive full payment of its loan. The Debtor disputes that the Credit Union has met the necessary elements of equitable estoppel.

The Seventh Circuit has indicated that application of the doctrine of equitable estoppel is particularly appropriate in bankruptcy proceedings. *Citation Cycle Co., Inc. v. Yorke,* 693 F.2d 691, 695 (7th Cir.1982). "The reasons for the general application of estoppel are simple enough-the doctrine prevents a party from benefitting from its own misrepresentations." *Black v. TIC Invest. Corp.,* 900 F.2d 112, 115 (7th Cir.1990). Estoppel arises when one party has made a misleading representation to another and the other party has reasonably relied to his detriment on that representation. *Id.* An equitable estoppel defense has three elements: (1) misrepresentation, (2) reasonable reliance on that misrepresentation, and (3) detriment. *FDIC v. Rayman,* 117 F.3d 994, 1000 (7th Cir.1997) (citing *Kennedy v. United States,* 965 F.2d 413, 417 (7th Cir.1992)).

The Court finds that the Credit Union has satisfied all three of these elements with respect to Count I of the complaint. As discussed above, on several occasions, the Debtor misrepresented to the

Credit Union and the United States District Court for the Central District of Illinois, as well as this Court, that he was voluntarily agreeing to repay the loan to the Credit Union. Also, it is undisputed that the Debtor personally and through his criminal attorney, Michael Metnick, made representations to the District Court and the Credit Union that he intended to fully honor and pay the loan. *See* Credit Union's Exhibit No. 1 (Transcript of Proceedings on June 12, 1997, p. 202, lines 8–15); Credit Union's Exhibit No. 7 (Motion to Distribute Assets).

Also, the Court finds that there is no dispute that based on the Debtor's representations, the Credit Union continued automatic payroll deductions. The Credit Union was made to believe that the payments were voluntary based on the Debtor's representations to this Court on September 13, 1996, to the District Court on June 12, 1997 and in various pleadings filed by the Debtor. *See* Credit Union's Exhibit No. 2 (Deposition of Debtor, p. 82, line 13–24 and p. 83, lines 1–23); Credit Union's Exhibit No. 1 (Transcript of Proceedings on June 12, 1997, p. 202, lines 8–15).

In Count II of the complaint, the Debtor seeks recovery of damages from the Credit Union arising from the Credit Union's retention of $3,116.80 in employment benefits after entry of the Debtor's August 28, 1996 discharge. The Debtor was sentenced on October 21, 1997, and as part of his sentence, was ordered to pay restitution of $9,009.03 to the Credit Union, and fines and assessments of $2,050.00 with the remainder to be paid to the Debtor. The $3,116.80 remainder was retained by the Credit Union as a settlement payment of its attorneys' fees provided under the loan papers for the subject debt. *See* Credit Union's Exhibit No. 4 (Affidavit of Richard Hurt, Exhibit B attached thereto).

The Court finds that there is no genuine issue of fact that the Debtor at multiple times unequivocally stated that he intended to repay the loan to the Credit Union

and voluntarily participated in a loan repayment plan via the payroll deduction, notwithstanding his later change of position in the instant litigation. Further, as evidenced by the loan documents signed by the Debtor, the loan includes the payment of reasonable attorneys' fees. Based on the Debtor's representations at the criminal trial and the pleadings he filed there, the Credit Union reasonably believed that it would receive payment of its entire loan balance, plus its attorneys' fees. The Credit Union's reliance on the Debtor's representations and those of his attorney was reasonable in light of the pleadings filed in the criminal proceeding and the Debtor's own statements, testimony and actions up to his conviction. The Credit Union's reliance on the Debtor's representations is evidenced by its motion to dismiss the adversary proceeding, which states that the Debtor, through his attorney, has indicated the Credit Union will be paid as part of the criminal proceeding. *See* Credit Union's Exhibit No. 8. Similarly, the District Court believed that the Debtor intended to pay the Credit Union's loan in full, as well as its attorneys' fees, as evidenced by the November 18, 1998 Order. *See* Credit Union's Exhibit No. 11.

Accordingly, the Court finds no genuine issue of fact exists and that as a matter of law the Credit Union is entitled to judgment on this issue. The Debtor is equitably estopped from seeking relief under § 362(h) and § 524. Consequently, the complaint is hereby dismissed.

## VI. *CONCLUSION*

For the foregoing reasons, the motion of the Credit Union for summary judgment is granted, in part, and the Debtor's complaint is hereby dismissed.

This *Opinion* constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.